Willie Earl MATHIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 53463.

Court of Criminal Appeals of Texas, En Banc.

Jan. 10, 1979.

Art Brender, Fort Worth (Court-appointed), for appellant.

Tim Curry, Dist. Atty., Marvin L. Collins and Howard A. Borg, Asst. Dist. Attys., Fort Worth, for the State.

OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of murder; the punishment is imprisonment for life.

In two grounds of error the appellant complains that his voir dire examination of the jury was restricted to the extent that he could not intelligently exercise his right to make peremptory challenges. He argues that the court erred in not permitting him to ascertain the prospective juror's attitudes and feelings about assessing a minimum punishment of five years' imprisonment for the offense of murder and in not permitting him to ascertain the prospective juror's attitudes and feelings for granting or denying probation to a defendant after his conviction for the offense of murder. We conclude after considering the record that appellant's counsel was not allowed sufficient latitude in voir dire examination. The matters complained of require that the judgment be reversed.

The right to be represented by counsel, guaranteed by Article 1, Section 10 of the Texas Constitution, encompasses the right of counsel to question the members of the jury panel in order to intelligently exercise his peremptory challenges. *Mathis v. State*, 167 Tex.Cr.R. 627, 322 S.W.2d 629 (1959); *DeLaRosa v. State*, 414 S.W.2d 668 (Tex.Cr.App.1967); *Burkett v. State*, 516 S.W.2d 147 (Tex.Cr.App.1974); *Hernandez v. State*, 508 S.W.2d 853 (Tex.Cr.App.1974); *Abron v. State*, 523 S.W.2d 405 (Tex.Cr.App.1975). The trial court, in its sound discretion, can and should control the voir dire examination of the venire; however, the permissible areas of questioning the panel in order to exercise peremptory challenges are broad and cannot be unnecessarily limited. *Smith v. State*, 513 S.W.2d 823 (Tex.Cr.App.1974).

Bias against the range of punishment is a proper area of inquiry for both

challenges for cause and peremptory challenges. When the contention is that the trial court erred in denying a challenge for cause, no reversible error is shown unless the defendant exhausted his peremptory challenges and one or more objectionable juror sat on the jury. However, when the question is asked for the purpose of exercising peremptory challenges, the test for injury is entirely different. If the question is proper, an answer denied prevents intelligent use of the peremptory challenge and harm is shown. *Smith v. State*, supra. As was stated in *Mathis v. State*, supra, ". . . it is immaterial how the jurors would have answered the question, for, whatever their answers, the appellant was entitled to know their answers in order to enable him to exercise his peremptory challenges."

In *Plair v. State*, 102 Tex.Cr.R. 628, 279 S.W. 267 (1926), it was held to be reversible error to refuse the request to interrogate the jurors individually as to their views concerning the suspended sentence law and whether they objected to giving application thereto in a proper case. The Court said:

"[T]he right to appear by counsel carries with it the right of counsel to interrogate each juror individually, to the end that he may form his own conclusions after this personal contact with the juror as to whether, in the counsel's judgment, he would be acceptable to him, or whether on the other hand he should exercise a peremptory challenge to keep him off the jury."

In the instant case the court first qualified the jury panel as a whole concerning general areas of the law. The court explained the range of punishment and the probation law as it applied to this case. The court asked the panel whether there was anyone who could not consider probation in a murder case. No prospective juror stated to the court that he or she could not fairly consider probation. Thereafter the prosecutor questioned the panel and individual jurors concerning the range of punishment and the law of probation. At that time one juror stated to the court and the prosecutor that if the appellant was found guilty of murder he could not consider probation as a form of punishment. This prospective juror was excused upon the appellant's challenge for cause. When the appellant's attorney questioned the panel concerning the range of punishment and the probation law two more jurors expressed reservations about probation. Appellant's complaints concern the following ruling by the trial court during the voir dire examination:

"MR. BLANKENSHIP: Mr. Acuff, our Law provides and we anticipate the Court will instruct you that the minimum penalty for a Robbery case or a Murder case in this State is five years confinement in the Texas Department of Corrections.

"* * *

"What I am asking you and this panel as a whole is: Can you imagine a fact-type case where there was a robbery and a person was killed in that robbery allegedly where you could give fair consideration for the minimum penalty of five years?

"In other words, do you feel that five years is too little and you could not in good conscience vote for five years?

"MR. ACUFF: If the man was guilty, is what you're saying?

"MR. BLANKENSHIP: Yes.

"MR. STRICKLAND: Your Honor, before the venireman answers, we would have an objection. This calls for the Juror to engage in speculation. I think the proper question is: Whether or not they could give fair consideration to the entire range of punishment and not sit here and imagine specific fact situations.

"THE COURT: I'll sustain the objection. It's hypothetical and I'll sustain the objection.

"MR. BLANKENSHIP: Well, let me put it this way: Mr. Acuff, and ladies and gentlemen of the panel as a whole, is there anybody on this panel that has strong feelings against any Law that provides for a minimum penalty of five years' confinement in the penitentiary for Murder?

"Let's just say Murder, for instance—Is there anybody on the panel that has strong feelings against that minimum penalty of five years?

"MR. STRICKLAND: We would again object, Your Honor. It's not a question of whether or not they have feelings for or against.

"The question is whether or not they could follow the Law.

"THE COURT: Yeah, I will ask the question. Is there anybody on the panel who couldn't follow that Law and consider the full range of punishment; that is, life or any term between five and ninety-nine years depending on what the facts are in the case?

"He's not asking you—He can't ask you about this case because you haven't heard the facts.

"Anybody have such a prejudice against that range of punishment that they couldn't consider the full range of punishment in a proper case?

"Okay.

"MR. BLANKENSHIP: Of course, I object to the Court's Ruling because the question that I asked, I felt, was a proper question and if such—so designed that it would enable me to gain information by voir dire examination which is the whole purpose of this situation here so that I can intelligently exercise peremptory challenges.

"And unless the witness is permitted to answer that question that I asked him—unless the prospective Juror is permitted to answer that question that I have asked, I object to the Court's Ruling and the effect to the Court's Ruling—I deem it so that the Court may take harsh—punitive action against me if I try to elicit this information from this prospective Juror and such Ruling of the Court is an undue restraint upon the Defendant's right to effective assistance of Counsel at each and every stage of the proceedings.

"THE COURT: Well, I have already Ruled. If I was wrong, I was wrong. The Ruling has already been made.

"MR. BLANKENSHIP: All right.

"Now, I know there is one lady back there—number forty-seven, that probably feels that under no circumstances vote for probation.

"MR. BENNETT: Your Honor, I'm going to object.

"MR. BLANKENSHIP: In a Murder-type case.

"MR. BENNETT: Your Honor, I'm going to object to him voir diring and questioning a prospective Juror that we in all likelihood will not reach.

"THE COURT: I'll sustain the objection. We can't get back to forty-seven.

"MR. BLANKENSHIP: Well, I wasn't directing this at her. I was just predicating it for the whole panel.

"I wanted to ask the whole panel: Is there anybody else that feels right now, having heard other people express this strong feeling that you may be prompted to let the cat out of the bag, so to speak—some people sometimes express their true feelings when they see whether or not anybody else has got the courage to speak up.

"Now, is there anybody on this panel here that hasn't before announced any feelings they may have against recommended probation in a case of Murder or Robbery—Aggravated Robbery, Armed Robbery?

"MR. BENNETT: Your Honor, I'm going to object to the form of the question. It's not whether they are going to recommend it in this case or any Robbery case.

"It's whether they are going to fairly consider it.

"THE COURT: I'll sustain the objection. It's a question of whether you will fairly consider it.

"MR. BLANKENSHIP: That is not what I was asking. I asked if there was anybody here that has got some strong feelings against it and that is what I want to know by this voir dire examination so that I can exercise my peremptory challenges with some degree of intelligence.

"I would like to ask that question and have these people answer it.

"THE COURT: Ask your question again.

"MR. BLANKENSHIP: Is there anybody on this panel now that have some strong feelings against recommending probation as a form of punishment in—first of all, a Murder case?

"MR. BENNETT: Your Honor, I'm going to make the same objection.

"THE COURT: Okay, I'll sustain the objection. It's not a matter of whether you have strong feelings. It's whether you can fairly consider it, ladies and gentlemen, and you have to be able to consider the full range of punishment including probation.

"MR. BLANKENSHIP: I want to object to the effect of the Court's Ruling.

"THE COURT: I'll sustain the objection.

"MR. BLANKENSHIP: It's denying me the opportunity by propounding questions on voir dire examination here to elicit from these people whether or not they've got strong feelings against it and I'm entitled to know more than whether they pay lip service to it, Judge.

"THE COURT: I have already Ruled.

"MR. BLANKENSHIP: I except the Court's Ruling."

■ Appellant's attorney should have been allowed to question the prospective jurors concerning their feelings about the range of punishment and probation so that he could intelligently exercise his peremptory challenges. The trial court's refusal to allow such questioning deprived the appellant of a valuable right and was an abuse of discretion. *Plair v. State*, supra; *Hernandez v. State*, supra; *Abron v. State*, supra.

■ On appeal the State's principal argument is that the appellant's counsel's questions were repetitive of those propounded by the court and prosecutor. We are not favorably impressed with this argument. So long as the method of jury selection long used in this State prevails—as opposed to practice in federal court—defense counsel may not be precluded from the traditional voir dire examination because the questions asked are repetitious of those asked by the court and prosecutor.

We do not necessarily hold that the precise questions used by defense counsel in this case must be permitted in all cases, but we are holding that the defense counsel must have a fair opportunity to interrogate the prospective jurors so that he may intelligently exercise his right to peremptorily challenge some of them.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

The majority incorrectly holds that appellant's counsel was not allowed sufficient latitude during voir dire examination. Specifically, appellant's conviction is reversed because of the court's refusal to allow counsel to question a prospective juror concerning (1) his attitude toward assessing the minimum punishment of five years for the offense of murder, and (2) his attitude toward the granting or denying of probation to a defendant convicted of murder.

The majority correctly recognizes that the conduct of voir dire examination must rest within the sound discretion of the court. *Moore v. State*, 542 S.W.2d 664 (Tex. Cr.App.1976); *Hernandez v. State*, 506 S.W.2d 884 (Tex.Cr.App.1974); *Weaver v. State*, 476 S.W.2d 326 (Tex.Cr.App.1972); *Pena v. State*, 114 Tex.Cr.R. 29, 29 S.W.2d 785 (1930), and that only abuse of such discretion will call for correction on appeal. *Battie v. State*, 551 S.W.2d 401 (Tex.Cr. App.1977); *Smith v. State*, 513 S.W.2d 823 (Tex.Cr.App.1974); *Kincaid v. State*, 103 Tex.Cr.R. 485, 281 S.W. 855 (Tex.Cr.App. 1926). Inherent in the trial court's discretion over the scope and course of voir dire is his ability to (1) place reasonable time limits on the examination, (2) disallow questions which are improper, and (3) prevent the propounding of vexatious or repetitious questions. *Abron v. State*, 523 S.W.2d 405 (Tex.Cr.App.1975). In placing limitations upon counsel's examination, the court in this case merely exercised those functions which were well within its judicial discretion; that discretion was not abused.

More than three hours were devoted to the voir dire examination—a considerable length of time in light of the fact that only eight hours were required for the introduction of the evidence and the arguments. Counsel was admonished by the court for wasting time. This Court has held that the amount of time expended by counsel on voir dire is to be considered in determining whether there has been an abuse of discretion. *Battie v. State*, supra. If the court in this case wished to avoid the propounding of unnecessary questions and the delay attendant thereto, it was within his discretion to do so.

The questions propounded by appellant's counsel were improper. Regarding the minimum applicable punishment, venireman Acuff was asked:

"What I am asking you and this panel as a whole is: Can you imagine a fact-type case where there was a robbery and a person was killed in that robbery allegedly where you could give fair consideration for the minimum penalty of five years?"

Counsel's question required that the venireman conjure up a hypothetical fact situation and speculate as to what his decision might be under such imaginary circumstances. It bore no relevance to the issue of whether or not venireman Acuff was capable of giving fair consideration to the entire range of punishment in a proper case.

Counsel proceeded to question Acuff:

"In other words, do you feel that five years is too little and you could not in good conscience vote for five years?"

In *Williams v. State*, 481 S.W.2d 119 (Tex.Cr.App.1972), defense counsel asked members of the venire whether they could assess a five-year penalty under a given factual situation. The question was held to be improper. In *Smith v. State*, supra, defense counsel attempted to question twelve members of the jury panel as to whether they might grant a two-year probated sentence for murder with malice, given a "proper case where the facts warranted it and circumstances justified it." The trial court refused to allow the question thus

framed and proceeded to qualify the venire himself on the range of punishment. No error was shown.

Appellant's counsel further questioned the venire:

"Now, is there anybody on this panel here that hasn't before announced any feelings they may have against recommended probation in a case of murder, or robbery—aggravated robbery, armed robbery?"

The question was intended to elicit from the panelists whether they would refuse to recommend probation in advance of their selection. It was improper. *Smith v. State*, supra.

Decisions as to the propriety of any question must be left to the discretion of the trial court. Such discretion is abused only when a properly framed question concerning a proper area of inquiry is prohibited. *Smith v. State*, supra. Inasmuch as appellant's question was improper, its denial by the court did not constitute an abuse of discretion.

This Court has previously ruled on the test to be utilized in determining whether the trial court has erroneously denied the asking of a question sought to permit an intelligent exercise of the accused's peremptory challenges. Following the State's objection to appellant's question concerning the minimum punishment, the court qualified the panel on the same subject:

"Yeah, I will ask the question. Is there anybody on the panel who couldn't follow that law and consider the full range of punishment; that is, life or any term between five and ninety-nine years depending on what the facts are in the case?

"He's not asking you—he can't ask you about this case because you haven't heard the facts.

"Anybody have such a prejudice against that range of punishment that they couldn't consider the full range of punishment in a proper case?"

The State is correct in its contention that appellant's counsel had the benefit of know-

ing the panel's response to the question he sought to ask. He was not deprived of any information necessary to the intelligent exercise of his peremptory challenge. In *Smith v. State*, supra, the specificity of the court's examination of the venire on the range of punishment and the similarity of its question to that which counsel sought to ask led this Court to the conclusion that no abuse of discretion occurred. In *Smith*, we stated that there is no error in prohibiting duplicitous questions where investigation into possibly proper or fruitful matters is not entirely prevented. In the present case the court correctly propounded the same question which counsel failed to properly frame. At no time did it restrict counsel's examination in legitimate fields of inquiry.

By its holding, the majority makes unjustified inroads into the authority of the court to conduct voir dire. As this Court observed in *Battie v. State*, supra, the trial judge must be vested with some discretion lest voir dire examination get completely out of control. See also, *Grizzell v. State*, 164 Tex.Cr.R. 362, 298 S.W.2d 816 (1957).

We should look to all of the examination of the prospective jurors to determine if an abuse of discretion has been shown. We should not reverse a conviction for the failure to permit a particular question where the same general matter has been covered in other questions. If we reverse for refusal to permit the asking of a particular question and these are increased as cases are handed down, then counsel will have an automatic right to ask each particular question. If not the case can be reversed on appeal. After these cases grow in number, the questioning of the prospective jurors can become unlimited.

One of the worst features of the jury system is the permission of the uncontrolled voir dire examination of prospective jurors. This wastes the time of the courts and people called to serve as jurors. This Court should not encourage this.

If voir dire is not to last for weeks or even months in some cases, the discretion exercised by the trial court should not be abridged in the absence of a clear showing of abuse.

No error is shown. The judgment should be affirmed.

ODOM, TOM G. DAVIS and W. C. DAVIS, JJ., join in this dissent.