**Clayton Allen MADDUX, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–89–00621–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 20, 1992.

Rehearing Denied March 19, 1992.

---

Michael B. Charlton, Charles F. Baird, Houston, for appellant.

John B. Holmes, Jr., Winston E. Cochran, Jr., Joan Campbell, Houston, for appellee.

Before MIRABAL, DUGGAN and O'CONNOR, JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant, Clayton Allen Maddux, guilty of murder. The jury as-sessed punishment at 30–years confinement. We affirm.

In his sixth point of error, appellant asserts the trial court abused its discretion in preventing him from asking a proper question on voir dire. Specifically, he complains the trial court prevented him from questioning the venire members on whether the fact a young child had been killed would influence their consideration of probation. The victim in the present case was a two-and-a-half year-old girl.

■ The standard of review in a case where the defendant claims he was improperly restricted on voir dire is whether the trial court abused its discretion. *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App. 1991).

During voir dire, appellant's counsel questioned the venire at length about their general willingness to consider probation in a murder prosecution. Appellant's counsel asked venirepersons if, in the event they found a person guilty of murder, they could consider as little as five-years probation and no fine in a proper case. Appellant's counsel then asked those venirepersons who had indicated they could consider five-years probation, whether they were thinking only of a mercy killing situation. Appellant's counsel then asked:

[By Defense Counsel]: Now then, we're not talking about any particular case. It would be improper to do that. But in a hypothetical case where there was a murder conviction and a child had died, how many of you would still be able to consider probation?

[By Prosecutor]: I object as being an improper—

The Court: Sustained, committing the jury to specific facts.

[By Defense Counsel]: In a hypothetical situation assuming that fact, and that fact alone, everything else was the same, the only fact that's different is that a child died, how many of you would still be able to consider as little as five years probation?

[By Prosecutor]: I object as being improper question, asking the jury to commit themselves to specific facts in a case.

The Court: Sustained.

[By Defense Counsel]: I'd like for the record to reflect I would like to ask that question of each and every juror.

The Court: It's—the ruling stands.

Appellant challenged for cause most of the venirepersons who had indicated an unwillingness to consider probation in a murder case. The venirepersons were questioned further by the judge at the bench, and those who maintained they could not consider five-years probation in any murder conviction case were dismissed for cause. Those who said they would listen to the facts and consider probation based on the facts, were not dismissed for cause. None of the venirepersons were allowed to answer whether they could consider probation if the murder victim was a child.

■ Questions asked of potential jurors are to enable the intelligent exercise of peremptory challenges and to establish a basis for a challenge for cause. *Abron v. State*, 523 S.W.2d 405, 408 (Tex.Crim.App. 1975). The right to pose such questions is part of the right to counsel under article I, section 10 of the Texas Constitution. *Mathis v. State*, 576 S.W.2d 835, 836 (Tex. Crim.App.1979); *Florio v. State*, 568 S.W.2d 132, 133 (Tex.Crim.App.1978). When it is contended that a question was not permitted that would have enabled the intelligent exercise of peremptory challenges, both the requirements of the due process clause of the United States Constitution and the right to counsel guaranteed by the Texas Constitution must be satisfied. *Abron*, 523 S.W.2d at 408.

■ It is properly within a trial court's discretion to impose reasonable restrictions on the exercise of voir dire examination. *Clark v. State*, 608 S.W.2d 667, 669 (Tex. Crim.App.1980). A trial court may properly (1) place reasonable time limits on the voir dire examination, (2) prevent the propounding of vexatious or repetitious questions, (3) disallow questions asked in an improper form, and (4) restrict inquiry into the personal habits of venirepersons, as opposed to inquiry into personal prejudices

or moral beliefs. *Abron*, 523 S.W.2d at 408.

■ To show an abuse of discretion, a defendant must demonstrate that the question he sought to ask was proper. If the question was proper and the defendant was prevented from asking it, then harm is presumed because the defendant could not intelligently exercise his peremptory challenges without the information gained from an answer. *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App.1985); *Bonilla v. State*, 740 S.W.2d 583, 584 (Tex.App.— Houston [1st Dist.] 1987, pet. ref'd).

■ A proper question is defined as one that seeks to discover a juror's views on an issue applicable to the case. *Nunfio*, 808 S.W.2d at 484; *Smith*, 703 S.W.2d at 643. Bias against the range of punishment and the punishment philosophy of jurors, are proper areas of inquiry for voir dire. *Smith*, 703 S.W.2d at 644–45; *Mathis*, 576 S.W.2d at 836–37. It is not improper to question potential jurors about their attitude on probation, if probation is within the scope of punishment that will be considered by the jury in the event of conviction. *Mathis*, 576 S.W.2d at 839; *Rodriguez v. State*, 513 S.W.2d 22, 26 (Tex.Crim.App. 1974).

■ In the present case, the State argues that although appellant was entitled to question the venirepersons about their willingness to consider probation in a murder case, appellant was not entitled to ask a hypothetical question that was based on the facts peculiar to the case on trial. The State relies on *White v. State*, 629 S.W.2d 701 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982). There, the trial court sustained the State's objection when the defense counsel asked a venireperson if he would be unable to consider a life sentence if it was proved that the defendant went into a store, attempted to rob it or robbed it, aimed a pistol at a woman's head at short range and shot her, killing her instantly, and if the woman's husband testified to that. These were the facts of the case. The Court of Criminal Appeals held there was no error in refusing to let the defense

counsel ask a hypothetical question that was based on facts peculiar to the case on trial. *White*, 629 S.W.2d at 706; *see also Cuevas v. State*, 742 S.W.2d 331, 345 n. 13 (Tex.Crim.App.1987), *cert. denied*, 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988). Such a question is improper because, by such specificity, a juror is being required to commit himself in answering it, in advance of hearing the evidence. *Hernandez v. State*, 508 S.W.2d 853, 854 (Tex.Crim.App. 1974).

Appellant argues the present case is distinguishable from *White* because defense counsel emphasized the hypothetical nature of the questions and did not provide details of the offense, such as the victim's age of two years or her relationship to appellant. Appellant argues that his counsel properly sought to establish prejudice based upon the *victim's status* as a child, just as defense counsel, in the recent case of *Nunfio v. State*, asked questions regarding a hypothetical victim's status as a nun.

In *Nunfio*, the trial court granted the State's motion in limine, ruling that the defense counsel could not ask the venire, in a case involving an aggravated sexual assault on a nun, whether, in a hypothetical case, the victim's status as a nun would affect their ability to be fair and impartial. The Court of Criminal Appeals held:

> Here, the question posed by appellant's counsel sought to determine potential bias or prejudice in favor of the victim by virtue of her vocation. Similar inquiries have been held to be proper. *See, e.g., Abron v. State*, 523 S.W.2d 405 (Tex. Crim.App.1975) (reversed rape conviction because trial court disallowed defendant's question to venire whether it would make a difference that the black defendant was accused of raping a white victim); *Hernandez v. State*, 508 S.W.2d 853 (Tex.Crim.App.1974) (reversed conviction because of trial court's refusal to allow defendant to ask venire if they could believe a police officer might lie under oath). The question in this case was proper and, thus, error is shown.

*Nunfio*, 808 S.W.2d at 484–85.

In the present case, the venire had been read the indictment, and therefore was aware appellant had been accused of murdering Krysti Lynette Irle by striking her head against an object or by shaking her. No mention was made of the victim's age. Appellant argues that "clearly, a child's murder can inflame venirepersons," just as a nun's status as the victim of a sexual assault can result in bias or prejudice.

We note *Nunfio, Abron,* and *Hernandez* are distinguishable to the extent the forbidden inquiry in each of those cases prevented defense counsel from determining jury bias in favor of categories of persons who would be *witnesses:* e.g., nun versus layperson in *Nunfio*, police officer versus ordinary citizen in *Hernandez*, white woman versus black man in *Abron*. If the present case had involved an aggravated sexual assault on a child, or some other offense in which the child complainant was a prospective *witness*, then defense counsel would have been entitled to question the venire members concerning bias for or against the child witness. Such is not the case presented here.

Applying the general rule set out in *White* and *Cuevas*, we hold appellant's question regarding "a hypothetical case where there was a murder conviction *and a child died*" was an improper question based on facts peculiar to the case on trial. Counsel had been permitted to question the venirepersons extensively regarding their willingness to consider probation in a proper case. Counsel's additional inquiry sought to commit veniremembers to consideration of probation in the specific case that would unfold before them—one involving a murdered child. We hold the trial court did not abuse its discretion when it prevented appellant's counsel from asking the question.

We overrule point of error six.

In his seventh point of error, appellant contends the trial court erred in refusing to dismiss the indictment for failure of the State to provide him with a speedy trial.

■ The test for analyzing a "speedy trial" claim is a process of balancing the factors set out in *Barker v. Wingo*, 407

U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant resulting from the delay. *Id.* at 530, 92 S.Ct. at 2192; *Turner v. State,* 545 S.W.2d 133, 136 (Tex.Crim.App.1976).

■■■ Appellant was arrested on June 13, 1985, and tried on June 6, 1989, four years later. The length of the delay, for these purposes, is measured from the institution of prosecution, when a defendant is formally accused or arrested. *Phillips v. State,* 650 S.W.2d 396, 399 (Tex.Crim.App.1983); *Turner,* 545 S.W.2d at 137.

■■■ There is no precise length of delay that constitutes a violation of the right to a speedy trial in all cases, but the Court of Criminal Appeals held in one case that five years was not a violation of the defendant's right to a speedy trial. *Easley v. State,* 564 S.W.2d 742, 744–45 (Tex.Crim. App.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978). The length of the delay is to some extent a triggering mechanism. Until there is some delay that is presumptively prejudicial, there is no necessity for inquiring into the other factors that go into the balance. *Turner,* 545 S.W.2d at 136. The four-year delay in this case is not, per se, a deprivation of appellant's right to a speedy trial, but it is a fact requiring further consideration of appellant's claim.

■■■ The second factor in the balancing test is the reason for delay. The burden is on the State to show it has a good excuse of causing the delay in bringing the defendant to trial. *Id.* at 137.

In the present case, the reason for the delay was the "unavailability" of the State's most important witness. The State's primary witness was Tracy Maddux, the victim's mother. Tracy Maddux was also indicted for the murder. Tracy had filed a pretrial writ of habeas corpus application, seeking to dismiss the indictment against her under the Speedy Trial

Act. The trial court denied relief, the intermediate appellate court reversed the trial court, and the Court of Criminal Appeals reversed the intermediate appellate court. The appeal process was not completed until September 21, 1988. The State could not proceed to trial in Tracy's murder case during that time. According to the State, because Tracy could not be convicted or acquitted during that period, the State could not reasonably expect Tracy Maddux to be available as a witness in appellant's trial.

■■■ In considering the reason for the delay, different weight should be assigned to different reasons. Generally, circumstances such as missing witnesses will justify the delay. *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192; *Easley v. State,* 564 S.W.2d at 744; *Crowder v. State,* 812 S.W.2d 63, 66 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). Although Tracy was not technically a *missing* witness, as a practical matter she was *unavailable* to testify, as she would have been if she was *missing.*

The third factor in the balancing test is the assertion of the defendant's rights. Appellant asserted his right to a speedy trial in motions filed on March 21, 1986, and May 12, 1986, oral requests from his attorney to the prosecutor, and a motion filed on April 19, 1989. Appellant's motions to dismiss claimed the State had failed to provide him with a speedy trial as guaranteed him by the sixth and fourteenth amendments of the U.S. Constitution, and article 1, section 10 of the Texas Constitution. The State points out that the motions of March and May of 1986, were ruled on by the trial court, and the rulings were upheld on appeal.[1] However, the *assertion* of the right is the factor to be considered, not the trial court's actions. This factor weighs in appellant's favor.

■■■ The final factor in the balancing test is prejudice to the defendant resulting from the delay; the accused must make some showing of that prejudice. *Phipps v.*

---

1. Appellant filed writs of habeas corpus challenging the adverse rulings on his speedy trial claims. The Fourteenth Court of Appeals, in unpublished opinions, denied relief.

*State,* 630 S.W.2d 942, 946 (Tex.Crim.App. 1982). In determining prejudice to the defendant, the interests to be considered are: 1) prevention of oppressive pretrial incarceration; 2) minimizing anxiety and concern of the accused; and, 3) limiting the possibility that the defense will be impaired. *Barker,* 407 U.S. at 534, 92 S.Ct. at 2194; *Turner,* 545 S.W.2d at 138. The first consideration does not apply to appellant, because he was released on bond during the pendency of the proceeding. Appellant's claim is that he was prejudiced by the delay because his ability to defend himself was impaired.

At the pretrial hearing, appellant's attorney testified that, according to his investigation, a witness by the name of Palmer or Paumer had either moved to Ohio or died of a stroke. In either event, the witness was outside the jurisdiction of the court. He also testified he was unable to locate a witness named Michael Lynott. There is nothing in the record of the pretrial hearing to indicate what either of the witnesses would have testified about. There is an indication that Michael Lynott had seen and spoken to appellant earlier in the day on June 4, 1985; Krysti died later that same day. However, there is no indication what his testimony would be concerning the offense itself. To show prejudice, a defendant need only show that the prospective witness was material to the case, not that the witness would have testified favorably to the defense. *Phillips v. State,* 650 S.W.2d 396, 402 (Tex.Crim.App. 1983); *Crowder v. State,* 812 S.W.2d at 67; *State v. Owens,* 778 S.W.2d 135, 138 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). However, in the present case, appellant has not met his burden to show that either of the two missing witnesses were material to the case. Therefore, this factor weighs against appellant.

Balancing the *"Barker"* factors, we hold there is sufficient evidence to justify the trial court's denial of the motion to dismiss the case for lack of a speedy trial.

We overrule appellant's seventh point of error.

The discussion of the remaining points of error does not meet the criteria for publication, TEX.R.APP.P. 90, and is thus ordered not published. We affirm the judgment.

O'CONNOR, Justice, dissenting.

I dissent. In his sixth point of error, appellant contends the trial court prevented him from questioning the venire members on whether the fact a young child had been killed would influence their consideration of probation. The victim was a two-and-a-half year-old girl.

During voir dire, the trial court prohibited appellant's counsel's hypothetical questions about whether the venire could consider probation in a murder case *where the victim was a child.* The standard of review in a case where the defendant claims he was improperly restricted on voir dire is whether the trial court abused its discretion. *Nunfio v. State,* 808 S.W.2d 482, 484 (Tex.Crim.App.1991) (trial court should have permitted voire dire regarding panel's prejudice when a nun was the victim of rape). If the restriction on voir dire was improper, we do not engage in the harm analysis. In such a case we are required to reverse.

The majority distinguishes *Nunfio* because the prohibited inquiry prevented the defense counsel from determining jury bias in favor of categories of persons as *"witnesses*: e.g., nun versus layperson." Slip op. at 515. Nothing in *Nunfio* supports the majority's holding that the nun's role as a witness (rather than her role as a victim) was the issue. Under the majority's analysis, a defendant may question the venire about its potential bias for or against a person who will be a witness, but not about the venire's bias for or against a person who was the victim.

The majority attempts the same distinction of *Abron,* "white woman versus black man in *Abron.*" Maj. op. at 515. Again, nothing in the *Abron* opinion supports the majority's inference that it was the white woman's role as a witness (rather than her role as a victim) that was at issue. The issue in *Abron* was the race of the defendant versus the race of the victim. One of

**518**

the questions the defense counsel was prevented from asking was if it would make a difference to the panel if the victim had been black, instead of white. Nothing in the opinion suggests it was the complaining witness' role as a witness that was the issue; it was her role as the victim.

Only *Hernandez v. State*, 508 S.W.2d 853 (Tex.Crim.App.1974), supports the majority. In *Hernandez*, the issue was whether the police officer was more believable than an ordinary citizen. There was nothing in the *Hernandez* opinion to suggest that the police officer's role as the complaining witness played any part in the voire dire.

The majority's position is that a trial court may not limit questions regarding the venire's prejudice against a certain type of person as a witness, but may limit questions regarding the venire's prejudice against a certain type of person as a victim. I see no logic in that distinction; neither can I find any support for it in the cases the majority cites.

We should sustain point of error six, reverse the judgment, and remand the cause for a new trial.