11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

David Wayne McCall

Appellant

Vs.                   No.
11-99-00189-CR  --  Appeal from Dallas County

State of Texas

Appellee

 

The jury convicted David Wayne McCall of
aggravated sexual assault.  After
hearing evidence that appellant had committed other aggravated sexual assaults,
that he had cut one of these victims with a knife and had shot at one of the
victims as she ran away, and that he had attempted to kidnap a woman who was
walking alone near her home, the jury assessed appellant=s punishment at confinement for life and a
fine of $5,000.  We affirm. 

In his first point of error, appellant contends
that the evidence is factually insufficient to prove the aggravating element of
the offense.  The aggravating
circumstances charged in this case were that appellant, by acts or words,
either:  (1) placed the victim in fear
that death or serious bodily injury would be imminently inflicted or (2)
threatened to cause the death or serious bodily injury of the victim.  See TEX. PENAL CODE ANN. ' 22.021(a)(2)(A) (Vernon
Supp. 2001).  In order to determine if
the evidence is factually sufficient in this case, we must review all of the
evidence and determine whether the verdict is so against the great weight of
the evidence as to be clearly wrong and unjust.  Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Cain v. State,
958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126
(Tex.Cr.App.1996).  








The record shows that, on Labor Day weekend in
1995, appellant encountered the victim walking the streets.  The victim was a runaway who had turned 16
years old not long before this offense. 
The victim agreed to perform oral sex for $100.  She got in appellant=s pickup, and they drove to a nearby
alley.  After he parked his pickup,
appellant reached down toward the floorboard near the driver=s side door.  The victim thought that he was reaching for
money to pay her.  Instead,  appellant had reached for a syringe with a
needle attached.  He grabbed the victim=s head, held the needle to
her neck, and said: ADo
what I say or I=m
going to stick this in your neck.@  The victim testified that she was scared and
that she Athought
[she] was going to die.@  She told appellant several times to
stop.  She was crying but did not scream
because appellant told her not to scream. 
Appellant instructed the victim to take off her shorts.  She complied.  Then, he pulled his shorts down and made her perform oral sex on
him.  Next, he pushed her to the seat,
got on top of her, and had intercourse with her.  Appellant held the needle to the victim=s neck during these events.  After he finished, he pulled up his shorts
and instructed the victim to put her shorts back on.  Appellant then took the needle, placed it into his left arm, and Ashot up.@  After injecting himself, appellant=s
eyes dilated.  The victim testified that
Ahe was kind of
slower...like a gloss came over him.@  Appellant told the victim:  ANow
look what I=ve
done.  What am I going to do with
you?  I think I=m going to kill you.@ 
Seizing the opportunity to escape, the victim jumped out of the pickup and
ran into the middle of the street screaming: ARape.  Help. 
Somebody raped me.  He=s going to kill [me].@   

Adrian A. Bruce and others attending a pool party
at a nearby residence heard the victim=s
screams.  When he saw appellant=s pickup speeding away with
the passenger door flopping open, Bruce jumped into his van and followed
appellant.  Appellant unsuccessfully
attempted to evade Bruce, and Bruce finally caught up to appellant in a Minyard=s parking lot and blocked
him in.  After a brief altercation,
Bruce grabbed appellant and forced him to go into the store.  Police were summoned, and appellant was
arrested.  Bruce testified that
appellant looked like he was high and that appellant=s eyes were glazed over and bloodshot.  Bruce also testified that appellant gave
three different stories about the incident: 
that the victim was lying and was a friend of his, that he had picked
her up off of Harry Hines, and that he had picked her up at an apartment in
Irving.  








Bruce and two other witnesses from the pool party
described the victim=s
screams as being loud, terrible, curdling, ungodly, and horror-flick type.  They testified that the victim was shaking
and shivering, that she had makeup running down her face from crying, and that
her knees were scratched up and dirty. 
The witness who brought the victim into her house and called police
testified that the victim told her that she had been raped, that the man had
tried to kill her, and that he stuck a needle up to her.  All of the witnesses, including a police
officer, who saw the victim shortly after the incident testified that the
victim appeared to be scared and that she was not faking. 

A police officer took the victim to the hospital
where a rape examination was performed. 
The DNA from a vaginal swab taken from the victim matched appellant=s DNA.  The probability that someone else could have
been the DNA donor Awas
one in more than the world=s
population, which is six billion.@  The forensic DNA analyst testified that the
banding pattern was very rare and that no other person could have the same
DNA.  

Appellant did not call any witnesses to testify in
his behalf, but he did attempt to impeach the victim=s credibility.  Appellant also showed that no syringe was recovered in this
case.  

After reviewing all of the evidence in a neutral
light, we hold that the evidence is factually sufficient to show that appellant
placed the victim in fear of imminent death or serious bodily injury and that
he threatened her with death or serious bodily injury.  The first point of error is overruled. 

In his second point, appellant argues that the
trial court erred by failing to instruct the jury on the lesser included
offense of sexual assault.  Appellant
contends that he was entitled to a charge on sexual assault because no syringe
was ever recovered and because the victim=s
testimony was impeached by the version of the story that she gave to police on
the day of the offense.[1]  We disagree. 

A charge on a lesser included offense is required
if:  (1) the lesser included offense is
included within the proof necessary to establish the offense charged and (2)
there is some evidence that would permit a rational jury to find that, if the
accused is guilty, he is guilty of only the lesser offense.  Rousseau v. State, 855 S.W.2d 666
(Tex.Cr.App.), cert. den’d, 510 U.S. 919 (1993); Royster v. State, 622
S.W.2d 442, 446 (Tex.Cr.App.1981).  In this case, the first prong of the
test was satisfied.  The second prong,
however, was not.  








In order to satisfy the second prong and warrant
an instruction on a lesser included offense, there must be some evidence for
the jury to consider that is directly germane to the lesser included offense;
and it is not enough that the jury may disbelieve crucial evidence pertaining
to the greater offense.  Skinner v.
State, 956 S.W.2d 532, 543 (Tex.Cr.App.1997), cert. den=d, 523 U.S. 1079
(1998).  The fact that the jury could
have disbelieved the portion of the victim=s
testimony concerning the aggravating elements of this offense was not enough to
warrant an instruction on the lesser offense. 
See Skinner v. State, supra. 
Furthermore, the evidence showing that no syringe was found in the alley
or during an inventory of appellant=s
pickup did not entitle appellant to such an instruction.  The lack of physical evidence to support the
victim=s testimony
that a syringe was used did not constitute Asome
evidence@ that she was
not in fear of imminent death or serious bodily injury or that appellant did
not threaten her with death or serious bodily injury.  See Brown v. State, 960 S.W.2d 265, 267-68 (Tex.App. - Corpus
Christi 1997, no pet=n).  In this case, there was no evidence that
appellant sexually assaulted the victim but did not threaten her or place her
in fear of imminent death or serious bodily injury.  The trial court did not err in refusing to charge the jury on the
lesser included offense of sexual assault. 
Appellant=s
second point of error is overruled. 

In the third point, appellant argues that the
trial court erred by restricting appellant=s
voir dire of the jury panel.  Appellant
asserts that he ran out of time during voir dire and was not allowed to
individually question three venire members, who ultimately sat on the jury,
about the range of punishment.  








This issue deals with two competing rights.  The first right is the constitutionally
guaranteed right to counsel, which includes the right to question prospective
jurors in order to intelligently and effectively exercise peremptory challenges
and challenges for cause.  The second
right is that of the trial court to impose reasonable restrictions on the
exercise of voir dire examination.  McCarter
v. State, 837 S.W.2d 117, 119 (Tex.Cr.App.1992).  The control of voir dire examination is within the sound
discretion of the trial court.  Cantu v.
State, 842 S.W.2d 667, 687 (Tex.Cr.App.1992), cert. den=d, 509 U.S. 926 (1993);
Ratliff v. State, 690 S.W.2d 597, 599 (Tex.Cr.App.1985); Mathis v. State, 576
S.W.2d 835, 836 (Tex.Cr.App.1979).  A
trial court may impose reasonable time limits on counsel=s voir dire. 
Cantu v. State, supra; Ratliff v. State, supra.  Counsel has the responsibility to
appropriately budget his time within the reasonable limits set by the court.  Whitaker v. State, 653 S.W.2d 781
(Tex.Cr.App.1983).  In reviewing the
reasonableness of the trial court's limitation, we consider three factors:  (1) whether appellant attempted to prolong
voir dire by asking irrelevant, immaterial, or unnecessarily repetitious questions,
(2) whether the questions that appellant was not permitted to ask were proper
voir dire questions, and (3) whether the record shows that the jury included
venire members whom appellant was not permitted to examine.  Ratliff v. State, supra at 599‑600.  The appropriate length of voir dire varies,
and each case must be examined upon its own facts.  








The record shows that, at the beginning of voir
dire, the trial court explained the duties of a juror, discussed general
principles of law, and gave a general overview of this case.  The trial court also asked specific
questions, including whether the venire members could consider the full range
of punishment.  The trial court then
required the venire members to fill out questionnaires that contained questions
propounded by both the prosecutor and defense counsel.  Later, after a lunch break, each side had 45
minutes to conduct voir dire.  Included
within the prosecutor=s
inquiries were questions concerning whether the venire members could consider
the full range of punishment.  The
record shows that, even though he was well aware of the time limitations placed
on voir dire, defense counsel discussed general principles of law, asked
questions that were repetitive, asked questions that were or could have been
contained in the questionnaire, and continued to ask improper questions even
though the trial court had sustained objections and instructed defense counsel
to rephrase his question.[2]  Furthermore, before his time was up, defense
counsel did inquire whether the venire members could consider the minimum
punishment.  When defense counsel ran
out of time, he was allowed to ask a couple of follow-up questions on the
punishment issue.  The trial court then
informed defense counsel that he would have to sit down, and the trial court
addressed any remaining concerns on this issue.  Defense counsel did not request additional time for further voir
dire of the panel.  The venire members
who had expressed concerns about being able to consider the minimum punishment
were excused for cause.  The trial court
noted for the record that the questionnaire that had been given to each venire
member Awas drawn up
by the State and defense together@;
that A[a]nything they
wanted to put in the questionnaire, they would have been allowed to@; and that counsel for each
side was provided Athe
opportunity to review the questionnaires and to conduct voir dire as they would
otherwise.@  

Under these circumstances, we hold that the trial
court did not abuse its discretion.  See
Cantu v. State, supra; Boyd v. State, 811 S.W.2d 105, 116 (Tex.Cr.App.), cert.
den=d, 502
U.S. 971 (1991); Menchaca v. State, 901 S.W.2d 640, 644-46 (Tex.App. - El Paso
1995, pet=n ref=d); Santos v. State, 681
S.W.2d 208 (Tex.App. - Houston [1st Dist.] 1984, pet=n ref=d).  The third point of error is overruled.  

In his final point, appellant complains of a Batson[3]
error.  He contends that the State=s use of a peremptory
strike on Venireperson Goodwin was racially motivated.  The use of peremptory challenges to strike
potential jurors on the basis of race is prohibited.  Batson v. Kentucky, supra; TEX. CODE CRIM. PRO. ANN. art. 35.261
(Vernon 1989).    In Purkett v. Elem,
514 U.S. 765 (1995), the Supreme Court delineated the three-step process for
properly determining a Batson challenge.  First, the opponent of a peremptory challenge must make out a
prima facie case of racial discrimination, essentially a burden of
production.  In the second step, the burden
of production shifts to the proponent of the strike to respond with a
race-neutral explanation.  Third, if a
race-neutral explanation has been proffered, the trial court must decide
whether the opponent of the strike has proved purposeful racial discrimination.  The burden of persuasion is on the opponent
of the strike to convince the trial court that the strike was racially
motivated.  Purkett v. Elem, supra; Ford
v. State, 1 S.W.3d 691, 693 (Tex.Cr.App.1999); Camacho v. State, 864 S.W.2d
524, 529 (Tex.Cr.App.1993), cert. den=d,
510 U.S. 1215 (1994).  

The record shows that appellant objected that the
State used half of its peremptory strikes Ato
strike African-Americans from the jury...and there are only two left.@  The prosecutor explained that he had struck Venireperson Goodwin
because she failed to answer her questionnaire.  The prosecutor stated that Venireperson Goodwin had left blank
some of the most important questions from the State=s standpoint; he observed that she had not
answered the following questions:  

Please describe your feelings concerning the
rights of persons accused of committing crimes.








If in a criminal case, the State must prove all it
alleges beyond a reasonable doubt, describe your feelings concerning this legal
standard.

 

What is your personal opinion
about the criminal-justice system? 

Additionally, Venireperson Goodwin did not answer the question
regarding her marital status, and she failed to rank her punishment
objectives.  We hold that the State=s explanation was
reasonable and racially neutral.  

In response to the State=s explanation, defense counsel stated that he
did not think the prosecutor had proffered a race-neutral explanation because Aa number of people [did
not] fill out their questionnaires completely.@  Defense counsel, however, did not introduce
the questionnaires into the record or point out any specific questionnaires
that were incomplete.  There is nothing
in the record to show that any other venire member left blank the questions
that the State deemed to be important. 
Consequently, appellant=s
rebuttal did not show that the State=s
race-neutral reasons for striking Venireperson Goodwin were a pretext for
discrimination.  We hold that the trial
court=s determination
on the Batson issue was not clearly erroneous.  See Chamberlain v. State, 998 S.W.2d 230, 236 (Tex.Cr.App.1999), cert.
den’d, 528 U.S. 1082 (2000); Adanandus v. State, 866 S.W.2d 210, 224-25
(Tex.Cr.App.1993), cert. den’d, 510 U.S. 1215 (1994).  The fourth point of error is overruled.  

The judgment of the trial court is affirmed.  

 

W. G. ARNOT, III

CHIEF JUSTICE

 

September 20, 2001

Do not publish. 
See TEX.R.APP.P. 47.3(b).

Panel
consists of:  Arnot, C.J., and 

Wright,
J., and McCall, J. 











     [1]Because she was a runaway who was prostituting herself,
the victim gave a false name and date of birth and said that appellant had
pulled her into the pickup.  One police
report also indicated that appellant had had two syringes and that he had Ashot up@ prior to the
offense. 





     [2]Defense counsel continued to ask whether the panel
members could consider and Agive@ the minimum punishment if appellant were convicted of
what was explicitly charged in the indictment in this case.  Although counsel may properly inquire
whether members of a panel can consider the entire range of punishment
(including the minimum) in a proper aggravated sexual assault case (one where
the facts justified it), defense counsel improperly attempted to commit the
jurors to give the minimum punishment in this case.  See Sadler v. State, 977 S.W.2d 140 (Tex.Cr.App.1998); Maddux v.
State, 862 S.W.2d 590, 592 (Tex.Cr.App.1993); Williams v. State, 481 S.W.2d 119
(Tex.Cr.App.1972); McCoy v. State, 996 S.W.2d 896 (Tex.App. - Houston [14th
Dist.] 1999, pet=n ref=d).  





     [3]Batson v. Kentucky, 476 U.S. 79 (1986).