AP-77,029
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/3/2015 1:20:25 PM
Accepted 2/3/2015 1:30:25 PM
ABEL ACOSTA
CLERK

NO. **AP-77,029**

IN THE COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

JAMES HARRIS JR.
Appellant

VS.

STATE OF TEXAS
Appellee

APPEAL FROM THE 149TH DISTRICT COURT
OF BRAZORIA COUNTY, TEXAS
AT
ANGLETON, TEXAS

TRIAL COURT CAUSE NO. 67063

APPELLANT'S BRIEF

Jimmy Phillips, Jr.
P. O. Drawer 29
Angleton, Texas  77516-0029
Tel: 979-849-8511 Fax: 979-849-1409
email: jimmy@jpjlaw.com
SBN 15953000
Attorney for Appellant
JAMES HARRIS JR.

February 2015

NO. **AP-77,029**

IN THE COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

JAMES HARRIS JR.
Appellant

VS.

STATE OF TEXAS
Appellee

APPEAL FROM THE 149TH DISTRICT COURT
OF BRAZORIA COUNTY, TEXAS
AT
ANGLETON, TEXAS

TRIAL COURT CAUSE NO. 67063

APPELLANT'S BRIEF

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

CERTIFICATE OF PARTIES

APPELLANT

JAMES HARRIS JR.

COUNSEL FOR APPELLANT

Jimmy Phillips, Jr.
P. O. Drawer 29
Angleton, Texas  77516-0029
Tel: 979-849-8511 Fax: 979-849-1409
email: jimmy@jpjlaw.com
SBN 15953000

APPELLEE

STATE OF TEXAS

COUNSEL FOR APPELLEE

Brazoria County District Attorney

REQUEST FOR ORAL ARGUMENT

In accordance with Texas Rules of Appellate Procedure, Appellant respectfully

waives oral argument.

i

# SUBJECT INDEX

PAGE

CERTIFICATE OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

REQUEST FOR ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii, iv

LIST OF AUTHORITIES AND STATUTES. . . . . . . . . . . . . . . . . . . . . . . . v, vi, vii

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii, ix

STATEMENT OF NATURE AND RESULT OF THE CASE. . . . . . . . . . . . . . . 2

APPELLANT'S POINTS OF ERROR

      POINT OF ERROR NUMBER ONE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      POINT OF ERROR NUMBER TWO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      POINT OF ERROR NUMBER THREE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      POINT OF ERROR NUMBER FOUR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      POINT OF ERROR NUMBER FIVE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      POINT OF ERROR NUMBER SIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      POINT OF ERROR NUMBER SEVEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      POINT OF ERROR NUMBER EIGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      POINT OF ERROR NUMBER NINE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      POINT OF ERROR NUMBER TEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT OF ERROR NUMBER ONE RESTATED. . . . . . . . . . . . . . . . . . . . . . 5
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER ONE. . . . 5-9
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER ONE. . . . . . . . . 9
ARGUMENT AND AUTHORITIES UNDER
     POINT OF ERROR NUMBER ONE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-17
CONCLUSION UNDER POINT OF ERROR NUMBER ONE. . . . . . . . . . . . . 18

POINT OF ERROR NUMBER TWO RESTATED. . . . . . . . . . . . . . . . . . . . . 19
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER TWO. . . . . 19
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER TWO. . . . . . 19-20
ARGUMENT AND AUTHORITIES UNDER
     POINT OF ERROR NUMBER TWO. . . . . . . . . . . . . . . . . . . . . . . . . . 20-22
CONCLUSION UNDER POINT OF ERROR NUMBER TWO. . . . . . . . . . . . . 22

POINT OF ERROR NUMBER THREE RESTATED. . . . . . . . . . . . . . . . . . . 23
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER THREE.23-24
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER THREE. . . . . . 24
ARGUMENT AND AUTHORITIES UNDER
     POINT OF ERROR NUMBER THREE. . . . . . . . . . . . . . . . . . . . . . . . 24-26
CONCLUSION UNDER POINT OF ERROR NUMBER THREE. . . . . . . . . . . 26

POINT OF ERROR NUMBER FOUR RESTATED. . . . . . . . . . . . . . . . . . . . 27
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER FOUR. 27-28
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER FOUR. . . . . . . 28
ARGUMENT AND AUTHORITIES UNDER
     POINT OF ERROR NUMBER FOUR. . . . . . . . . . . . . . . . . . . . . . . . . 28-30
CONCLUSION UNDER POINT OF ERROR NUMBER FOUR. . . . . . . . . . . . 30

POINT OF ERROR NUMBER FIVE RESTATED. . . . . . . . . . . . . . . . . . . . . 31
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER FIVE. . 31-32
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER FIVE. . . . . . . . 33
ARGUMENT AND AUTHORITIES UNDER
     POINT OF ERROR NUMBER FIVE. . . . . . . . . . . . . . . . . . . . . . . . . . 33-35
CONCLUSION UNDER POINT OF ERROR NUMBER FIVE. . . . . . . . . . . . . 35

POINT OF ERROR NUMBER SIX RESTATED. . . . . . . . . . . . . . . . . . . . . . . . 36
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER SIX. . . . . . 36
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER SIX. . . . . . . 36-37
ARGUMENT AND AUTHORITIES UNDER
      POINT OF ERROR NUMBER SIX. . . . . . . . . . . . . . . . . . . . . . . . . . . 37-39
CONCLUSION UNDER POINT OF ERROR NUMBER SIX. . . . . . . . . . . . . . 39

POINT OF ERROR NUMBER SEVEN RESTATED. . . . . . . . . . . . . . . . . . . . . 40
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER SEVEN. . . 40
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER SEVEN. . . . 40-41
ARGUMENT AND AUTHORITIES UNDER
      POINT OF ERROR NUMBER SEVEN. . . . . . . . . . . . . . . . . . . . . . . . 41-42
CONCLUSION UNDER POINT OF ERROR NUMBER SEVEN. . . . . . . . 42-43

POINT OF ERROR NUMBER EIGHT RESTATED. . . . . . . . . . . . . . . . . . . . . 44
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER EIGHT. 44-45
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER EIGHT. . . . 45-46
ARGUMENT AND AUTHORITIES UNDER
      POINT OF ERROR NUMBER EIGHT. . . . . . . . . . . . . . . . . . . . . . . . 46-50
CONCLUSION UNDER POINT OF ERROR NUMBER EIGHT. . . . . . . . . . . 51

POINT OF ERROR NUMBER NINE RESTATED. . . . . . . . . . . . . . . . . . . . . . 52
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER NINE. . 52-53
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER NINE. . . . . . . . 53
ARGUMENT AND AUTHORITIES UNDER
      POINT OF ERROR NUMBER NINE. . . . . . . . . . . . . . . . . . . . . . . . . 53-57
CONCLUSION UNDER POINT OF ERROR NUMBER NINE. . . . . . . . . . . . 57

POINT OF ERROR NUMBER TEN RESTATED. . . . . . . . . . . . . . . . . . . . . . . 58
STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER TEN. . . 58-59
SUMMARY OF ARGUMENT POINT OF ERROR NUMBER TEN. . . . . . . . 59
ARGUMENT AND AUTHORITIES UNDER
      POINT OF ERROR NUMBER TEN. . . . . . . . . . . . . . . . . . . . . . . . . . 59-62
CONCLUSION UNDER POINT OF ERROR NUMBER TEN. . . . . . . . . . . . . 62

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

iv

# LIST OF AUTHORITIES

CITATIONS:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE

Barrow v. State, 688 S.W.2d 860, 863 fn.1
(Tex. Crim. App. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 30, 35, 38

Boyd v. State, 811 S.W.2d 105, 118 (Tex. Crim. App. 1991) . . . . . . . . . . . . 47, 54

Broders v. Heise, 924 S.W.2d 148, 151 (Tex. 1996). . . . . . . . . . . . . . . . . . . . 14

Coble v. State, 330 S.W.3d 253, 273(Tex. Crim. App.2010). . . . . . . . . . . . . . 11

Comeaux v. State, 413 S.W.3d 176, 182-183
(Tex. App. Beaumont 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29, 34, 37

Cooks v. State, 844 S.W.2d 697, 721 (Tex. Crim. App. 1992). . . . . . . . . . . . 41, 42

Cordova v. State, 733 S.W.2d 175, 186
(Tex. Crim. App. 1987). . . . . . . . . . . . . . . . . . . . . 25, 26, 29, 30, 34, 35, 37, 38

Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied,
476 U.S. 1159, 90 L. Ed. 2d 721, 106 S. Ct. 2279 (1986). . . . . . . . . . . . . . . . 15

E. I. Du Pont de Nemours & Co. v. Robinson,
923 S.W.2d 549, 558 (Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Easley v. State, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014)46, 48, 50, 53, 55, 59

Eddings v. Okla., 455 U.S. 104 (U.S. 1982) . . . . . . . . . . . . . . . . . . . 25, 30, 34, 38

Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). . . . . . 25, 29, 33, 37

Gardner v. State, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). . . . . 25, 29, 33, 37

Hill v. State, 426 S.W.3d 868, 877 (Tex. App. Eastland 2014). . . . . . 49, 50, 57, 62

Jackson v. State, 17 S.W.3d    664, 670 (Tex. Crim. App. 2000). . . . . . . . . 10, 11

Kelly v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). . . . . . . . . . . . 10, 12

Layton v. State,280 S.W.3d 235, 241(Tex. Crim. App.2009) . . . . . . . . . . . . . . 11

Lockett v. Ohio, 438 U.S. 586, 604-605 (U.S. 1978). . . . . . . . . . . . . . . . . . . . . 49, 47

Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . 16

Reeves v. State, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). . . . . . . . . . . . . . 20

Roise v. State,7 S.W.3d 225, 233(Tex. App. Austin1999. . . . . . . . . . . . . . . . . 15

Sadler v. State, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). . . . . . 24, 29, 33, 37

Samaripas v. State, 2014 Tex. Crim. App. LEXIS 1559,
11 (Tex. Crim. App. Oct. 15, 2014).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 54, 60

Sanchez v. State, 165 S.W.3d 707, 711-12 (Tex. Crim. App. 2005). . . . . . . . . . 47

Sexton v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002).. . . . . . . . . . . . . . 10,11

Smith v. State, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985) . . . . . . 46, 48, 53, 61

State v. Esparza,413 S.W.3d 81, 93(Tex. Crim. App.2013). . . . . . . . . . . . . . . . 12

Thomas v.  State, 701 S.W.2d 653, 658 (Tex.Cr.App. 1985).. . . . . . . . . . . . . . . 42

Villarreal v. State, 2014 Tex. App. LEXIS 8589
(Tex. App. Austin Aug. 7, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Weathered  v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). . . . . . . . . 10, 11

Zavala v. State, 401 S.W.3d 171, 175
(Tex. App. Houston 14th Dist. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**STATUTES.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE**

TEXAS RULES OF EVIDENCE
      TRE Rule 104(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14
      TRE Rule 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 18
      TRE Rule 705. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9, 12, 17

TEXAS RULES OF APPELLATE PROCEDURE
      TRAP Rule 44.2(a). . . . . . . . . . . . . . . . . . . . . . . 48, 50, 55, 57, 61, 62
      TRAP Rule 44.2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 47, 56, 61

TEXAS CODE OF CRIMINAL PROCEDURE
      TCCP Art. 35.16 (a)(9) & ( c)(2). . . . . . . . . . . . . . . . . . . 24, 28, 33, 37
      TCCP Art. 36.14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE

Appendix - Attachment 1  (Reporter's Record Vol 73, Pg. 5 to 42). . . . . . . . . . . 5

Appendix - Attachment 2  (Reporter's Record Vol 73, Pg. 125 to Pg. 129 ). . .  8,16

Appendix - Attachment 3 (Reporter's Record Vol 74, Pg. 60 to 61). . . . . . . . .  9 17

Appendix - Attachment 4 (Reporter's Record  Vol 74, Pg. 152 to 153) . . . . . .  9 17

Appendix - Attachment 5 (District Clerks Record Vol 4, Pg.  115).. . . . . . . . . . 19

Appendix - Attachment 6 (Reporter's Record Vol. 74, Pg.  10, line 6 to 17).  19, 21

Appendix - Attachment 7 (Reporter's Record Vol. 26, Pg. 48 to 139). . . . . . . . 23

Appendix - Attachment 8 (Reporter's Record Vol. 27, Pg. 112 to 213). . . . . . . 27

Appendix - Attachment 9 (Reporter's Record Vol. 29, Pg. 48 to 253). . . . . . . . 31

Appendix - Attachment 10 (Reporter's Record Vol. 32, Pg. 34 to 109 ). . . . . . . 36

Appendix - Attachment 11 (Reporter's Record Vol. 49, Pg. 201 to 232). . . . . . . 40

Appendix - Attachment 12 (Reporter's Record Vol. 32, Pg. 101 to 102). . . . . . . 43

Appendix - Attachment 13 (Reporter's Record Vol. 27, Pg. 190 to 195). . . . . . . 50

Appendix - Attachment 14 (Reporter's Record Vol. 27, Pg. 204 to 207). . . . . . . 51

Appendix - Attachment 15 (Reporter's Record Vol. 23, Pg. 99 to 100). . . . . . . . 56

NO. **AP-77,029**

IN THE COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

JAMES HARRIS JR.
Appellant

VS.

STATE OF TEXAS
Appellee

APPEAL FROM THE 149TH DISTRICT COURT
OF BRAZORIA COUNTY, TEXAS
AT
ANGLETON, TEXAS

TRIAL COURT CAUSE NO. 67063

BRIEF OF APPELLANT, JAMES HARRIS JR.

TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW JAMES HARRIS JR., the Appellant in the above entitled and numbered cause, and submits this brief seeking reversal of the judgment below and the granting of a new trial or in the alternative the reformation of his sentence to life without parole.

## STATEMENT OF THE NATURE AND RESULT OF THE CASE

The Defendant was indicted on February 9, 2013, for the offense of Capital Murder committed on January 14, 2012. After jury selection, the Defendant's trial began on November 11, 2013. The Defendant plead guilty to the indictment. Evidence was heard on punishment and at the conclusion of the evidence, the issue of punishment was submitted to the jury. On the 11th day of December, 2013, the jury returned its verdict. The Court found that the punishment assessed was death. The Defendant was sentenced on December 11, 2014. The Defendant gave notice of appeal on December 16, 2013. Motion for new trial was filed on December 19, 2013. An amended motion for New Trial was filed on January 9, 2014. The filing of that motion was called to the Judge's attention on January 9, 2014. The new trial was overruled as a matter of law, giving rise to this appeal.

## APPELLANT'S POINTS OF ERROR

**POINT OF ERROR NUMBER ONE:**

The Trial Court erred in allowing the State to impeach the legal findings found by the trial court that Dr. Raymond Singer was qualified to testify as an expert in toxicology and neuropsychology and that his opinions were relevant and admissible before the jury.

**POINT OF ERROR NUMBER TWO:**

The Court erred in its charge to the jury because the finding of the Court that the Defendant was competent and sane was a comment on the weight of evidence before the jury.

**POINT OF ERROR NUMBER THREE:**

The trial court erred in refusing to grant the Appellant's motion to strike for cause the juror, Brenda Woods.

**POINT OF ERROR NUMBER FOUR:**

The trial court erred in refusing to grant the Appellant's motion to strike for cause the juror, Stephanie Cooper.

**POINT OF ERROR NUMBER FIVE:**

The trial court erred in refusing to grant the Appellant's motion to strike for cause the juror, Brenda Lee.

**POINT OF ERROR NUMBER SIX:**

The trial court erred in refusing to grant the Appellant's motion to strike for cause the juror, Donna Vanscoy.

**POINT OF ERROR NUMBER SEVEN:**

The trial court erred in failing to allow the Defendant additional peremptory challenges upon his request before the 12th juror was seated with the selected jury because the trial court has erred by refusing to strike one or more jurors for cause and thereby forced the Defendant to use one or more of his peremptory strikes because of the error.

POINT OF ERROR NUMBER EIGHT:

The trial court erred in preventing the defendant from acquiring from Donna Vanscoy information with which to intelligently exercise his peremptory challenges and challenges for cause during jury selection.

POINT OF ERROR NUMBER NINE:

The trial court erred in preventing the defendant from acquiring from Stephanie Cooper information with which to intelligently exercise his peremptory challenges and challenges for cause during jury selection.

POINT OF ERROR NUMBER TEN:

The trial court erred in preventing the defendant from acquiring from Audrey Holt information with which to intelligently exercise his peremptory challenges and challenges for cause during jury selection.

<u>POINT OF ERROR NUMBER ONE RESTATED:</u>

The Trial Court erred in allowing the State to impeach the legal findings found by the trial court that Dr. Raymond Singer was qualified to testify as an expert in toxicology and neuropsychology and that his opinions were relevant and admissible before the jury.

<u>STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER ONE:</u>

Dr. Raymond Singer was called to testify for the Defense in the punishment phase of the trial. Pursuant to a request from the state, the Court held a hearing pursuant to Tex. Evid. R. 705 outside the presence of the jury to determine the qualifications of Dr. Raymond Singer to testify as an expert and the appropriateness of the opinions which he would offer.[1] During the hearing, Dr. Raymond Singer testified that he was employed as a neuropsychologist and neurotoxicologist. He received a Ph. D. Degree in psychology. He studied biological psychiatry in a post doctoral fellowship at New York University School of Medicine. Next, he had a fellowship where he studied the effects of toxic chemicals, particularly the effects of low level chronic exposures. He was board certified in Neuropsychology with added qualifications in forensic specialization. At the Mount Sinai School of Medicine, he assessed the effects of neurotoxicity which included evaluating patients and developing methodology to evaluate the effects of neurotoxicants, which he taught

---

[1]Appendix - Attachment 1- (Reporter's Record Vol 73, Pg. 5 to 42)

at the Mount Sinai School of Medicine. After four years there, he joined the Society of Toxicology and has been a full member for 25 years. He further testified about his numerous publications and his other professional memberships. (Reporter's Record, Vol 73, Pg. 5 to 9) He then detailed the work he had done on the Defendant's case and the opinions that he had reached and would testify about before the jury. Since 1983 he has averaged giving testimony about 4 times a year. (Reporter's Record, Vol 73, Pg. 9 to 11)

The attorney for the State then cross-examined him pointing out that he was not a medical doctor, a radiologist, or a neurologist. (Reporter's Record, Vol 73, Pg. 17 to 19) After establishing his compensation for his services in the Defendant's case and that he had two offices, the State then inquired about his opinions that he would offer. (Reporter's Record, Vol 73, Pg. 19 to 27)

The attorney for the State then began to question him concerning cases in which the State maintained that Dr. Raymond Singer had not been qualified to give his opinions. The excluded testimony was in an extreme minority of the times he had testified in court. There were four cases discussed.

The first was in Virginia. Dr. Singer didn't know why, but believed that it was excluded because a witness who he had relied on was excluded. The testimony was not based on scientific unreliability. (Reporter's Record, Vol 73, Pg. 28 to 29) Dr.

Singer's testimony was excluded once in Texas in 1985. Dr. Singer's testimony in New Mexico concerned an electromagnetic hypersensitivity case which was tried to a judge. The Judge dismissed the case. There was a case in California which concerned mold toxicity where he did not testify. The Court did not let anyone testify about mold neurotoxicity. He did not recall any others but those four. His testimony was concluded. (Reporter's Record, Vol 73, Pg. 29 to 32)

The parties then made arguments to the court based on the 705 hearing. The state objected that: the witness was not a medical doctor. He is not a radiologist and cannot read a MRI and that his testimony was excluded before in several courts. The State maintained that he was not qualified to testify. The State also maintained that if the Court found that Dr. Singer was qualified as an expert, the prior exclusions of Dr. Singer's opinions was a proper inquiry before the jury. (Reporter's Record, Vol 73, Pg. 32 to 35) The Defendant's attorney argued that in the event that the Court found Dr. Singer qualified and his opinions admissible, it would be improper for the Court to allow the State to mention before the jury the impeachment evidence of the other court rulings that was presented to the Court out of the jury's presence. The cases did not have the same facts and opinions as the instant case. To allow such impeachment basically goes behind the Court's legal findings which held that Dr. Singer is qualified as an expert and can give his opinions to the jury. The state gave

three cases to the Court. (Reporter's Record, Vol 73, Pg. 35 to 36) They were never

identified with certainty or made part of the record.

After further discussion and reviewing the cases, the Court ruled:

"I am going to go ahead and allow him to testify to the limited basis that
he said he's qualified to attest to and to the things he testified to during
this 705 examination. I think the magnitude of the case would require
me to allow that to be brought in. But the defense is entitled to test his
qualifications with regard – I'm sorry. I am looking at you.

MS. YENNE: We're to the point where we could swap.

THE COURT: You can go into prior cases where he has been found to
be not qualified. Because some of this language in these cases is pretty
pointed as to going to his qualifications to give toxicology - type
opinions. But I will allow him to testify, but I will allow the State to go
in on cross-examination to those other issues."

The Defendant's attorney then objected and the Court said he understood and

again overruled the objection. (Reporter's Record, Vol 73, Pg. 41 Ln. 6 to Ln. 24)

During cross-examination, the State did in fact go into the court cases it had

mentioned before the Court when contending that the cases showed that the

Defendant's expert was not qualified to be an expert and his opinions were not valid

opinions. The State never introduced the cases into evidence before the jury, and they

are not therefore in the appellate record of proceedings before the jury. (Reporter's

Record Vol 73, Pg. 125 to Pg. 129) [2] The State did not offer a counter-expert to the

---

[2] Appendix - Attachment 2 (Reporter's Record Vol 73, Pg. 125 to Pg. 129 )

-8-

opinions of Dr. Singer.

During closing argument, the State continued to emphasize that Dr Singer was not qualified as an expert and his opinions were not valid due to the fact that other courts had held that he could not testify. The state concluded in an emotional argument intended to arouse the emotion of the jury against the Defendant's expert that he was like a "snake oil salesman" and his opinions were worthless and should not be considered. (Reporter's Record Vol 74, Pg. 60 to 61) [3] and (Reporter's Record Vol 74, Pg. 152 to 153) [4]

## SUMMARY OF ARGUMENT POINT OF ERROR NUMBER ONE:

Pursuant to the state's request, the trial court held a hearing pursuant to Rule 705 and performed the "gatekeeping functions" required of the trial court. At the conclusion of the hearing, the court allowed the expert to testify and thereby implicitly found by clear and convincing evidence that the defendant's expert was qualified to testify and his opinions were admissible and helpful for the jury. Thereafter, he allowed the state's attorney to attack the court's findings before the jury, without any expert testimony. In doing so, the trial court turned over his "gatekeeping functions" in law to the jury to decide if the expert was legally qualified

---

[3]Appendix - Attachment 3 (Reporter's Record Vol 74, Pg. 60 to 61)

[4]Appendix - Attachment 4 (Reporter's Record Vol 74, Pg. 152 to 153)

to testify to the opinions

 the court had approved.  The actions of the court denied the defendant a fair trial, and

the judgment should be reversed.

ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NUMBER ONE:

*The Trial Court's Error:*

A jury is not equipped with the legal education and understanding of scientific

evidence to properly judge whether it can meet the requirements of Tex. Evid. R. 702.

Scientific evidence has the ability to mislead a jury that is not properly equipped to

judge the probative force of the evidence. Under Rule 702, it is the responsibility of

the trial court to determine whether the scientific evidence offered is sufficiently

reliable, as well as relevant, to help the jury in reaching accurate results in its

deliberation. Kelly v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). This places

the trial judge in the role of a "gatekeeper," whose responsibility is to weed out

inadmissible evidence based on a lack of reliability. Sexton v. State, 93 S.W.3d 96,

99 (Tex. Crim. App. 2002); Kelly, 824 S.W.2d at 572. The proponent of scientific

evidence bears the burden of proving, **by clear and convincing proof** [5], that the

evidence is sufficiently relevant and reliable to assist the jury in determining a fact

_____

[5]Jackson v. State,17 S.W.3d 664(Tex. Crim. App.2000)
Weatherred v. State,15 S.W.3d 540(Tex. Crim. App.2000)
Sexton v. State,93 S.W.3d 96(Tex. Crim. App.2002)

-10-

in issue. Sexton, 93 S.W.3d at 100; Jackson v. State, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000); Weathered v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Kelly, 824 S.W.2d at 573. Also see Layton v. State,280 S.W.3d 235, 241(Tex. Crim. App.2009)

In Kelly v. State, the Texas Court of Criminal Appeals adopted several procedural and substantive limitations upon the admission of expert scientific testimony to ensure that unreliable expertise would be excluded from the jury's consideration. Under Kelly, a trial judge is mandatorily required, upon request, to conduct a "gatekeeping" hearing outside the presence of the jury to determine whether scientific evidence is sufficiently reliable and relevant to help the jury in reaching an accurate result. Then the judge must decide whether, on balance, that expert testimony might nonetheless be unhelpful or distracting for other reasons.

To be considered reliable, evidence from a scientific theory must satisfy three criteria: "(a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question." The trial court's essential gatekeeping role is to ensure that evidence that is unreliable because it lacks a basis in sound scientific methodology is not admitted. Coble v. State, 330 S.W.3d 253, 273(Tex. Crim. App.2010)

While ultimately the proponent of scientific evidence bears the burden of

proving reliability by satisfying the criteria set forth in Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992), it is the trial court that must conduct the hearing and determine whether the proponent has established that criteria.("Under Rule 104(a) and (c) and Rule 702, all three [Kelly] criteria must be proven to the trial court, outside the presence of the jury, before the evidence may be admitted[,]" and "Rule 104(a) requires that the admissibility of expert testimony be determined by the trial court."). State v. Esparza,413 S.W.3d 81, 93(Tex. Crim. App.2013). There is no provision which allows the trial court to shift the mandatory "gatekeeping" obligation of the court to the deliberation of the jury.

In this case, the Court held the hearing as required under Tex. Evid. R. 705 outside the presence of the jury. After the hearing, the trial court held that Dr. Raymond Singer was a qualified expert and could testify to the opinions within his expertise about the matters made known to the Court. Because of his "gatekeeping" role" the trial court had to reach the following legal findings and conclusions as a result of "clear and convincing proof", before he could allow the expert to testify:

1.      That Dr. Raymond Singer was qualified as a neuropsychologist and a neurotoxicologist and had expertise in neurotoxicology and psychology.

2.      That the underlying scientific theory was valid.

3.      That the technique was properly applied on the occasion in question.

4.      That the expert evidence would help the jury in reaching an accurate

-12-

result.

5. That the expert evidence was sufficiently relevant and reliable to assist the jury in determining a fact in issue.

6. That the findings, 1 to 5 above, had been established by "clear and convincing proof"

.

The trial court thereafter ruled that the State could attack and impeach the Court's findings by introducing before the jury other cases from other courts, which had other fact situations and considerations, to establish that Dr. Raymond Singer was not a qualified expert; that his scientific theory was not a valid one; and that the technique was not properly applied. In this case, Dr. Raymond Singer was the only expert qualified by the trial court in his field and his opinions in his field were the only opinions which the court had found reliable and admissible. The State did not qualify a counter expert with differing opinions. The only action of the state was to use cross examination techniques and speculation to cause an emotional reaction among the jurors to discredit the defendant's expert and his opinions. It should be additionally noted that at no time did the State even prove that the "other cases" it questioned Dr. Raymond Singer about were the same type of issues as in the Defendant's capital case or concerned the same matters that were being testified to in the defendant's trial. The jury *was never informed of the legal findings of the Court.* The jury was never charged by the court on how they would be required to

conduct the "gatekeeping functions" to test the qualifications of Dr. Singer and the value of his opinions. This in itself created a distinct advantage in favor of the State's position and against the Defendant's position and the Court's explicit findings. The jury never knew that the Court had found the expert qualified and the evidence reliable, but had to judge the legal qualifications of the expert and his opinions without any additional expert or legal guidance.

What the trial court did by allowing this procedure was to totally negate his "gatekeeping function" and place the "gatekeeping function" decision solely in the hands of the jurors. All of the safeguards of <u>Kelly v. State</u> and its progeny simply flew out of the window and the jury became the judges of the legal qualifications of the expert and the opinions which he held without any guidance on how to accomplish that task. Under the trial court's ruling, a jury not properly equipped to judge the validity and legal relevance of the expert's evidence, took over the trial court's mandatory duty to assess the validity of the evidence through the court's "gatekeeping functions".

Preliminary questions concerning admissibility of evidence are determined by the trial court. See Tex. R. Evid. 104(a). This determination will not be overturned absent a clear abuse of discretion. See <u>Broders v. Heise</u>, 924 S.W.2d 148, 151 (Tex. 1996); <u>E. I. Du Pont de Nemours & Co. v. Robinson</u>, 923 S.W.2d 549, 558 (Tex.

-14-

1995).

The test for determining whether an abuse of discretion occurred is not whether the facts present an appropriate case for the trial court's action; rather, the test is whether the trial court acted without reference to any guiding rules and principles, or in other words, acted in an arbitrary and unreasonable manner. See <u>Downer v. Aquamarine Operators, Inc.</u>, 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 90 L. Ed. 2d 721, 106 S. Ct. 2279 (1986)." <u>Roise v. State</u>,7 S.W.3d 225, 233(Tex. App. Austin1999)

In the Defendant's trial, there exists no authority for the trial court to turn over to the jury the required function of the trial court to determine the reliability and admissibility of the expert testimony. Clearly, there was an abuse of the trial court's discretion.

*Harm Analysis:*

Because the error of the trial court was so great, a harm analysis should not be necessary and Appellant does not agree that a harm analysis is necessary. However, in the event that a harm analysis should be required, the Appellant would show that a reversal of the conviction or reformation of the sentence is required based on the harm that the trial court's error caused. See Tex. R. App. P. 44.2(b). Non-constitutional error "that does not affect substantial rights must be disregarded."

Substantial rights are not affected by the erroneous admission of evidence if, after examination of the record as a whole, there is fair assurance that the error did not influence the jury, or had but a slight effect. Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. Id. Considerations may also include jury instructions, the State's theory, and any defensive theories, closing arguments, and voir dire, if applicable. Finally, a consideration may be the State's emphasis on the error as a factor.

Having been given free reign to question the trial court findings concerning the expert qualifications, the State on numerous occasions questioned the qualifications and opinions of the expert with prior holdings of other courts in other factual situations. There were four distinct cases which were discussed in which the State's attorney brought out before the jury Dr. Singer's opinions did not prevail or he was excluded as an expert [6]. None of the cases were shown to have any relation to the type of opinion that was being rendered in the case before the jury. Even if the

_____

[6]Appendix - Attachment 2 (Reporter's Record Vol 73, Pg. 125 to Pg. 129 )

-16-

questioning was not significant enough to mislead the jury, it set up the final argument of the State in closing:[7]

- Dr singer's opinions were "worthless".

- " His testimony has been excluded in so many courts he just about can't count.

- "His science is not reliable"

- He was like a "snake oil salesman"

- "We have fancy forms of strange snake oil. They are called neuropsychologist."

- "You can't find any self-respecting medical doctor that would have the nerve to come in and testify to this."

- "This man will find a toxin anywhere for money."

- "He's not a medical doctor. He's not a neurologist. He's not a psychiatrist."

By allowing the State to attack the findings of the Court by clear and convincing evidence, and bring in the cases from the other courts and the facts of the extraneous cases which had to the opinions offered in the defendant's capital murder case, the defendant was denied a fair trial and denied the chance of a proper punishment in his death penalty trial. Every point made by the State, as above noted,

---

[7]Appendix - Attachment 3 (Reporter's Record Vol 74, Pg. 60 to 61)
and Appendix - Attachment 4 (Reporter's Record Vol 74, Pg. 152 to 153)

-17-

during its argument was designed to arouse the emotional feelings of the jurors against the Defendant's expert, his opinions, and ultimately the Defendant's case. The actions of the state in questioning the rulings of the court and the argument they made about the expert's opinions could only have harmed the substantial rights of the defendant to a fair hearing.

CONCLUSION UNDER POINT OF ERROR NUMBER ONE:

The jury never was informed that the trial court had found from "clear and convincing evidence" that the trial court used to make its "gatekeeping determinations". The entire hearing became a nullity. The harm that the Tex. Evid. R. 702 and 705 was designed to prevent occurred. The jury was given no guidance from the Court on how to determine and evaluate the expert and his opinions. The trial jury which was not properly equipped to judge the legal requirements before the evidence could be disregarded. They had no training on how to adequately judge the qualifications of this expert and his testimony nor to compare the impeachment matters inquired into by the State. The conviction of the Defendant should be reversed and a new trial ordered or in the alternative, the sentence of death should be reformed to a sentence of life without the possibility of parole.

POINT OF ERROR NUMBER TWO RESTATED:

The Court erred in its charge to the jury because the finding of the Court that the Defendant was competent and sane was a comment on the weight of evidence before the jury.

STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER TWO:

The Court's Charge to the jury contained the following after reciting that the Defendant had pleaded guilty:

> "And it appearing to the Court **that the defendant is competent and sane and that he is not influenced to make this plea by any consideration of fear, nor by a persuasive or delusive hope of pardon prompting him to confess his guilt**, said plea is by the Court received " (emphasis added) [8]

The Defendant objected to the inclusion of the language because the same was not necessary and was a comment on the weight of the evidence.[9] Throughout the trial, it was the defense contention that a major part of the mitigation was that the Defendant suffered from mental impairment due to circumstances beyond his control and his use of illegal drugs.

SUMMARY OF ARGUMENT POINT OF ERROR NUMBER TWO:

The Defendant's theory during the punishment hearing was that his mental condition was such that it mitigated against the imposition of the death penalty. He

---

[8] Appendix - Attachment 5 (District Clerks Record Vol 4, page 115)

[9] Appendix - Attachment 6 (Reporter's Record Vol. 74, page 10, line 6 to 17)

introduced evidence that both the environment where he was raised and worked, and his habitual use of drugs affected his mental capacity to such an extent that it mitigated against the imposition of the death penalty. The trial court informing the jury that he had found the Defendant sane and competent was a comment on the evidence, and extremely harmful to the mitigation theory of the defendant.

ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NUMBER TWO:

Tex. Code Crim. Proc. Art. 36.14 provides that the Court shall deliver a written charge distinctly setting forth the law applicable to the case; **not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts .........**(emphasis added). The charge of the court was in error because it commented on the weight of the evidence as to the mental condition of the Defendant and expressed the trial court's opinion that the Defendant was competent and sane.

If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be some harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless. Reeves v. State, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). The court's charge is erroneous because it conveys to

-20-

the jury that the Court has found the Defendant, competent and sane.

This portion of the court's charge was duly objected to by the appellant when they made the following objection:

> "There is a semicolon after the consequences of the same, and I would ask that the Court stop the paragraph at that semicolon. The jury is not to decide competence or sanity. That has not been an issue in the case. They are not supposed to consider any undue influence regarding the Defendant's plea. The word "pardon" is prejudicial, and should not be considered by the jury. All of that second part of that paragraph and/or sentence is prejudicial and inappropriate for the jury to consider. It's a comment on the weight of the evidence. It's confusing. It is not neutral, and not principle as required by Gregg and Tuilaepa versus California."[10]

The charge being erroneous and having been properly objected to prior to reading of the charge before the jury, there remains the question whether the error is "calculated to injure the rights of defendant".

In this case, the all important issue was mitigation evidence as would warrant a sentence of life rather than a sentence of death. The mitigation presented to the jury consisted mainly of the defense that the past history of the Defendant was such as to subject him to psychological disability as a result of hazzards of his environment[11],

---

[10] Appendix - Attachment 6 (Reporter's Record Vol. 74, Pg. 10, line 6 to 17)

[11] To raise the mitigation facts, the Defendant presented a county agricultural agent to explain the chemicals tat was used in the field where the Defendant worked, family members and other expert witnesses.

-21-

other environment factors, and his drug usage which resulted in a mental disability. As a result of that disability, the Defendant was unable to control his actions as a normal person would be able to do. The inability to control his actions resulted in the murder of the deceased.

While not an excuse for his actions, these facts, if believed by the jury certainly would be a mitigating circumstance which would lessen the "moral capability" of the Defendant and allow for the assessment of life without parole as a punishment.

CONCLUSION UNDER POINT OF ERROR NUMBER TWO:

Because of the comment on the weight of the evidence concerning the mental condition of the defendant conflicted with the evidence being presented in mitigation of punishment, the error was harmful and of such a prejudicial nature that the judgment should be set aside and a new trial ordered, or in the alternative, the judgment should be reformed to a sentence of life without the possibility of parole.

POINT OF ERROR NUMBER THREE RESTATED:

The trial court erred in failing to grant the Appellant's motion to strike for cause the juror, Brenda Woods.

STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER THREE: [12]

Brenda Woods was strongly in favor of a death sentence. Given the hypothetical of a convicted capital murder defendant who had no defense she agreed that the only appropriate sentence for such a defendant was the death sentence. (Reporter's Record Vol. 26, p. 104) She had held her opinions about the death sentence pretty much through her life. Her feelings are strong and were probably derived from her father. (Reporter's Record Vol. 26, p. 105) Her views and her father views are pretty much the same. The death penalty is part of society and mankind. (Reporter's Record Vol. 26, p. 107) The death penalty removes those that cannot be rehabilitated.

If you have a murder case, the best option is the death penalty. (Reporter's Record Vol 26, p.114) As to the future danger issue, if she convicted a person of capital murder, she would have to answer "yes" that the defendant was a future danger. (Reporter's Record Vol. 26, p. 121) and that would be based on her beliefs about capital murder defendants. The Court denied the motion to strike Brenda

---

[12] Appendix - Attachment 7 (Reporter's Record Vol. 26, Pg. 48 to 139 )

-23-

Woods for cause. The Defendant then used peremptory strike number five against her.

SUMMARY OF ARGUMENT UNDER POINT OF ERROR NUMBER THREE:

The testimony of Brenda Woods taken as a whole indicated that she had a bias or prejudice which would substantially impair her ability to serve as a juror in the capital trial of the defendant, and the trial court should have excused her for cause at the request of the defendant.

ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NUMBER THREE:

Under the Code of Criminal Procedure, a defendant may challenge a prospective juror for cause if the juror has a "bias or prejudice in favor of or against the defendant", or "a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely" Tex Code Crim. Proc. §35.16(a)(9), (c)(2). "A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." §35.16(a). Bias against the law includes a potential juror's refusal to consider or apply the relevant law because the potential juror's beliefs or opinions would prevent or substantially impair the performance of the juror's duties. Sadler v. State, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). The test of whether the juror should be dismissed is whether the bias or prejudice would substantially impair the juror's ability to carry out his oath

-24-

and instructions in accordance with the law. Gardner v. State, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009); Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). See Comeaux v. State, 413 S.W.3d 176, 182-183 (Tex. App. Beaumont 2013)

Therefore, before a prospective juror is qualified to sit as a juror, that person must unequivocally demonstrate for the record that he or she would not disregard his oath or the trial court's instructions on the law in deciding both guilt and punishment. Thus, a prospective juror who unequivocally demonstrates for the record that he could fairly decide the issue of guilt, but would not be able to decide the issue of punishment or answer special issues fairly and impartially based upon the evidence, is disqualified, as a matter of law, as a prospective juror. Thus, the prospective juror must be able to fairly and impartially judge and decide not just one issue; he or she must be able to fairly and impartially judge and decide both the defendant's guilt as well as the punishment to be assessed, or, in capital murder cases, the answers to the special issues. Cordova v. State, 733 S.W.2d 175, 186 (Tex. Crim. App. 1987)

It is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing the sentence. Eddings v. Okla., 455 U.S. 104 (U.S. 1982) The response of Brenda Woods indicates that she was a disabled juror in regards to her personal beliefs when it came to answering the mitigation special issue.

The key to the analysis of the propriety of all rulings upon challenges for cause is not the use or lack of use of a single word but the import of the voir dire of the juror taken as a whole." Cordova v. State, 733 S.W.2d 175, 179 (Tex. Crim. App. 1987) (quoting Barrow v. State, 688 S.W.2d 860, 863 fn.1 (Tex. Crim. App. 1985).

Here, a review of the transcription of the voir dire indicates a strong opinion concerning capital punishment which she has held most of her life. She would like to hear the facts, but the result remains that if the defendant is actually guilty beyond a reasonable doubt, the appropriate result would be the imposition of the death sentence as a result of her personal views.

CONCLUSION UNDER POINT OF ERROR  NUMBER THREE:

The juror record taken as a whole indicates that the trial court should have granted the motion to strike Brenda Woods, made by the Appellant, for cause.

POINT OF ERROR NUMBER FOUR  RESTATED:

The trial court erred in failing to grant the Appellant's motion to strike for cause the juror, Stephanie Cooper.

STATEMENT OF FACTS UNDER POINT OF ERROR  NUMBER FOUR: [13]

Stephanie Cooper testified that if you found someone guilty beyond a reasonable doubt, the death sentence was more humane than life without parole.  It was a more compassionate sentence.  (Reporter's Record Vol. 27, p. 179) Then she restates that if found guilty beyond a reasonable doubt, it is more humane to sentence them to death, but she needed to hear everything before she makes that judgment. (Reporter's Record Vol 27, p.181)

Further, her belief was if there is definite proof that the defendant took a life, then he should pay with his life.  She would argue against the death penalty only if there was a chance the Defendant was innocent. (Reporter's Record  Vol. 27, p. 182) If there was any doubt in her mind about guilt, she would not want to send a defendant to a lethal injection.  Her personal belief is that the death penalty should be available for all murders. (Reporter's Record Vol 27, p. 184)

Her views about capital punishment are based on God and the bible.  If you kill somebody, you pay with your own life. (Reporter's Record Vol 27, p.186)

_____

[13]  Appendix - Attachment 8 (Reporter's Record Vol.27, Pg. 112 to 213 )

Then towards the end of the voir dire examination she stated she could set aside her string feelings and be "fair". (Reporter's Record Vol. 27, p. 201) The Court denied the motion to strike Stephanie Cooper for cause.  The Defendant then used peremptory strike number six against her.

SUMMARY OF ARGUMENT UNDER POINT OF ERROR NUMBER FOUR:

The testimony of Stephanie Cooper taken as a whole indicated that she had a bias or prejudice which would substantially impair her ability to serve as a juror in the capital trial of the defendant, and the trial court should have excused her for cause at the request of the defendant.

ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR   NUMBER FOUR:

Under the Code of Criminal Procedure, a defendant may challenge a prospective juror for cause if the juror has a "bias or prejudice in favor of or against the defendant", or "a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely" Tex Code Crim. Proc. §35.16(a)(9), (c)(2). "A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." §35.16(a). Bias against the law includes a potential juror's refusal to consider or apply the relevant law because the potential juror's beliefs or opinions would prevent or substantially

-28-

impair the performance of the juror's duties. Sadler v. State, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). The test of whether the juror should be dismissed is whether the bias or prejudice would substantially impair the juror's ability to carry out his oath and instructions in accordance with the law. Gardner v. State, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009); Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). See Comeaux v. State, 413 S.W.3d 176, 182-183 (Tex. App. Beaumont 2013)

Therefore, before a prospective juror is qualified to sit as a juror, that person must unequivocally demonstrate for the record that he or she would not disregard his oath or the trial court's instructions on the law in deciding both guilt and punishment. Thus, a prospective juror who unequivocally demonstrates for the record that he could fairly decide the issue of guilt, but would not be able to decide the issue of punishment or answer special issues fairly and impartially based upon the evidence, is disqualified, as a matter of law, as a prospective juror. Thus, the prospective juror must be able to fairly and impartially judge and decide not just one issue; he or she must be able to fairly and impartially judge and decide both the defendant's guilt as well as the punishment to be assessed, or, in capital murder cases, the answers to the special issues. Cordova v. State, 733 S.W.2d 175, 186 (Tex. Crim. App. 1987)

It is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that

evidence in imposing the sentence. Eddings v. Okla., 455 U.S. 104 (U.S. 1982) The response of Stephanie Cooper indicates that she was a disabled juror in regards to her personal beliefs when it came to answering the mitigation special issue.

The key to the analysis of the propriety of all rulings upon challenges for cause is not the use or lack of use of a single word but the import of the voir dire of the juror taken as a whole." Cordova v. State, 733 S.W.2d 175, 179 (Tex. Crim. App. 1987) (quoting Barrow v. State, 688 S.W.2d 860, 863 fn.1 (Tex. Crim. App. 1985).

Stephanie Cooper's religious and personal views are deeply ingrained and believed. Although she stated several times that she could be fair and could consider the alternatives, it would not be logical to believe that she would be able to set them aside and answer the special issues fairly and impartially based on the evidence. She demonstrated a deep religious belief which would prevent her from properly considering mitigation in the punishment phase of the trial.

CONCLUSION UNDER POINT OF ERROR  NUMBER FOUR:

The juror record taken as a whole indicates that the trial court should have granted the motion to strike Stephanie Cooper, made by the Appellant, for cause.

<u>POINT OF ERROR NUMBER FIVE RESTATED:</u>

The trial court erred in refusing to grant the Appellant's motion to strike for cause the juror, Brenda Lee.

<u>STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER FIVE:</u> [14]

When asked about disregarding an illegally obtained confession in a death penalty case when it was needed to convict, Brenda Lee indicated that she could not say that she could disregard the confession even though she found that it was invalid. (Reporter's Record Vol 29, p. 138) But later said that if it is the only evidence to prove guilt, she would not use it. (Reporter's Record Vol 29, p. 141)

Brenda Lee stated that upon the conviction of a capital defendant, a death penalty would definitely be on the table. (Reporter's Record Vol. 29,p.123) She opined that in biblical times, the law is specific. A life is a life. If you take a life, then a life is called for. (Reporter's Record Vol. 29, p.131) The short answer is that she feels, an eye for an eye

"Q.    Okay. Ms. Yenne said that mitigation is anything that might -- it doesn't lessen the guilt, but it lessens the blame. Okay?

A.    Okay.

Q.    Guilty capital murderer, future danger. Would you ever consider anything that would lessen the blame of that person?

---

[14]    Appendix - Attachment 9 (Reporter's Record Vol. 29, Pg. 48 to 253 )

A.      I think I could. You know, again, not being in the position, trying to forecast myself there, I would hope that I could still -- and I think I could still -- consider other circumstances, mitigating things that happen.

Q.      Do you have doubts?

A.      Yes, I do.

Q.       Tell me about that.

A.       I just -- it's hard for me to picture once coming to those two things that there is something out there. However, you know, it is a possibility that it's out there.

Q.      Okay. You said it's hard for you to consider that?

A.       It's just hard to think of it. Not consider. I mean, that's probably the wrong word. But it's hard to come up with it in my head right now. I can't imagine it.

Q.      Okay.

A.      But it doesn't mean it's not there.

Q.       Sure. But I need to know whether or not you can do that. It's a guilty capital murderer. You have determined beyond a reasonable doubt they are going to be a future danger. Can you ever consider anything that will lessen the blame of that guilty murderer?

A.      I could consider it if I can see it. I mean, I don't know what it would be. I don't know what that mitigation could be. I don't know what it would be. I just don't.

(Reporter's Record Vol. 29, p. 145, l. 20 to p. 146 l. 25)

The Court denied the motion to strike Brenda Lee for cause.  The Defendant then

-32-

used peremptory strike number seven against her.

<u>SUMMARY OF ARGUMENT UNDER POINT OF ERROR NUMBER FIVE:</u>

The testimony of Brenda Lee taken as a whole indicated that she had a bias or prejudice which would substantially impair her ability to serve as a juror in the capital trial of the defendant, and the trial court should have excused her for cause at the request of the defendant.

<u>ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NUMBER FIVE:</u>

Under the Code of Criminal Procedure, a defendant may challenge a prospective juror for cause if the juror has a "bias or prejudice in favor of or against the defendant", or "a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely" Tex Code Crim. Proc. §35.16(a)(9), (c)(2). "A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." §35.16(a). Bias against the law includes a potential juror's refusal to consider or apply the relevant law because the potential juror's beliefs or opinions would prevent or substantially impair the performance of the juror's duties. <u>Sadler v. State</u>, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). The test of whether the juror should be dismissed is whether the bias or prejudice would substantially impair the juror's ability to carry out his oath and instructions in accordance with the law. <u>Gardner v. State</u>, 306 S.W.3d 274, 295

(Tex. Crim. App. 2009); <u>Feldman v. State</u>, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). See Comeaux v. State, 413 S.W.3d 176, 182-183 (Tex. App. Beaumont 2013)

Therefore, before a prospective juror is qualified to sit as a juror, that person must unequivocally demonstrate for the record that he or she would not disregard his oath or the trial court's instructions on the law in deciding both guilt and punishment. Thus, a prospective juror who unequivocally demonstrates for the record that he could fairly decide the issue of guilt, but would not be able to decide the issue of punishment or answer special issues fairly and impartially based upon the evidence, is disqualified, as a matter of law, as a prospective juror. Thus, the prospective juror must be able to fairly and impartially judge and decide not just one issue; he or she must be able to fairly and impartially judge and decide both the defendant's guilt as well as the punishment to be assessed, or, in capital murder cases, the answers to the special issues. Cordova v. State, 733 S.W.2d 175, 186 (Tex. Crim. App. 1987)

It is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing the sentence. Eddings v. Okla., 455 U.S. 104 (U.S. 1982) The response of Brenda Lee indicates that she was a disabled juror in regards to her personal beliefs when it came to answering the mitigation special issue.

The key to the analysis of the propriety of all rulings upon challenges for cause

is not the use or lack of use of a single word but the import of the voir dire of the juror taken as a whole." Cordova v. State, 733 S.W.2d 175, 179 (Tex. Crim. App. 1987) (quoting Barrow v. State, 688 S.W.2d 860, 863 fn.1 (Tex. Crim. App. 1985).

Brenda Lee's answers to the questions and her expression of her opinions indicated a strong belief is giving a death penalty as punishment for a capital murder offense. She could follow the law with regard to the use of invalid confessions only if it was the "only" evidence of guilt. If there was other evidence, she would not disregard it. It is difficult to imagine that if she would not disregard an illegally obtained confession when there was other evidence, that she would not be tempted to disregard it when a capital murder would be set free.

Additionally, her answers concerning mitigation in a death penalty case strongly indicate that she was an impaired juror in regards to finding and considering mitigation evidence which was presented at trial.

CONCLUSION  UNDER POINT OF ERROR NUMBER FIVE:

The juror record taken as a whole indicates that the trial court should have granted the motion to strike Brenda Lee, made by the Appellant, for cause.

POINT OF ERROR NUMBER SIX RESTATED:

The trial court erred in refusing to grant the Appellant's motion to strike for cause the juror, Donna Vanscoy.

STATEMENT OF FACTS UNDER  UNDER POINT OF ERROR NUMBER SIX:
[15]

Donna Vanscoy at first said that she could listen to all evidence before she decided on the punishment.  Then as she was being questioned she became more definite about the sentence she would give.  If no reason for a murder or  two people were murdered, her only verdict would be death.  In those instances, she would be automatic death. (Reporter's Record Vol. 32, p.81) She has felt that way for the last 20 years.  And she feels strongly about those punishments. (Reporter's Record Vol 32, p. 82)

The Court denied the motion to strike trial court erred in failing to grant the Appellant's motion to strike the juror, Donna Vanscoy,  for cause.  The Defendant then used peremptory strike number eight against her.

SUMMARY OF ARGUMENT UNDER POINT OF ERROR NUMBER SIX:

The testimony of Donna Vanscoy taken as a whole indicated that she had a bias or prejudice which would substantially impair her ability to serve as a juror in the capital trial of the defendant, and the trial court should have excused her for cause at

---

[15] Appendix - Attachment 10 (Reporter's Record Vol. 32, Pg. 34 to 109 )

the request of the defendant.

ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NUMBER SIX:

Under the Code of Criminal Procedure, a defendant may challenge a prospective juror for cause if the juror has a "bias or prejudice in favor of or against the defendant", or "a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely" Tex Code Crim. Proc. §35.16(a)(9), (c)(2). "A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." §35.16(a). Bias against the law includes a potential juror's refusal to consider or apply the relevant law because the potential juror's beliefs or opinions would prevent or substantially impair the performance of the juror's duties. Sadler v. State, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). The test of whether the juror should be dismissed is whether the bias or prejudice would substantially impair the juror's ability to carry out his oath and instructions in accordance with the law. Gardner v. State, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009); Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). See Comeaux v. State, 413 S.W.3d 176, 182-183 (Tex. App. Beaumont 2013)

Therefore, before a prospective juror is qualified to sit as a juror, that person must unequivocally demonstrate for the record that he or she would not disregard his oath or the trial court's instructions on the law in deciding both guilt and punishment.

-37-

Thus, a prospective juror who unequivocally demonstrates for the record that he could fairly decide the issue of guilt, but would not be able to decide the issue of punishment or answer special issues fairly and impartially based upon the evidence, is disqualified, as a matter of law, as a prospective juror. Thus, the prospective juror must be able to fairly and impartially judge and decide not just one issue; he or she must be able to fairly and impartially judge and decide both the defendant's guilt as well as the punishment to be assessed, or, in capital murder cases, the answers to the special issues. Cordova v. State, 733 S.W.2d 175, 186 (Tex. Crim. App. 1987)

It is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing the sentence. Eddings v. Okla., 455 U.S. 104 (U.S. 1982) The response of Donna Vanscoy indicates that she was a disabled juror in regards to her personal beliefs when it came to answering the mitigation special issue.

The key to the analysis of the propriety of all rulings upon challenges for cause is not the use or lack of use of a single word but the import of the voir dire of the juror taken as a whole." Cordova v. State, 733 S.W.2d 175, 179 (Tex. Crim. App. 1987) (quoting Barrow v. State, 688 S.W.2d 860, 863 fn.1 (Tex. Crim. App. 1985).

Donna Vanscoy's strong feelings concerning capital murder defendants and the appropriate sentence formed by those feelings even before she had heard the evidence

would prevent her from fairly and impartially answering the legal issues in the case.

CONCLUSION  UNDER  POINT OF ERROR NUMBER  SIX:

The juror record taken as a whole indicates that the trial court should have granted the motion to strike Donna Vanscoy made by the Appellant.

POINT OF ERROR NUMBER SEVEN RESTATED:

The trial court erred in failing to allow the Defendant additional peremptory challenges upon his request before the 12ᵗʰ juror was seated with the selected jury because the trial court has erred by refusing to strike one or more jurors for cause and thereby forced the Defendant to use one or more of his peremptory strikes because of the error.

STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER SEVEN: [16]

Before the time that the 12ᵗʰ juror was seated, the Defendant made known to the trial court that the Defendant was out of peremptory challenges and that the juror was objectionable to the Defendant. He then filed and submitted to the Court a motion for additional peremptory challenges, before the juror was seated. His motion was overruled by the court. (Reporter's Record Vol. 49, Pg. 231 )

Prior to the motion for additional peremptory challenges, the trial court had erroneously failed to grant the Defendant's challenge for cause against the jurors, Brenda Woods, Stephanie Cooper, Brenda Lee, and Donna Vanscoy.

SUMMARY OF ARGUMENT UNDER POINT OF ERROR NUMBER SEVEN

The trial court should have granted the defendant's motion to strike for cause one or more of the following jurors: Brenda Woods, Stephanie Cooper, Brenda Lee, sand/or Donna Vanscoy. When the defendant's peremptory strikes were exhausted, the trial court should have given the defendant additional peremptory strikes to use.

---

[16] Appendix - Attachment 11 (Reporter's Record Vol. 49, Pg. 201 to 232 )

By refusing to do so, the trial court denied the Defendant a legally constituted jury.

ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NUMBER SEVEN:

In order to preserve error because of the failure of the trial court to grant additional peremptory strikes, an appellant must show:

> "1. The voir dire of the individual venire person was recorded and transcribed.
>
> 2. The appellant at trial asserted a clear and specific challenge for cause clearly articulating the grounds therefore.
>
> 3. After the challenge for cause is denied by the trial court, appellant uses a peremptory challenge on that juror.
>
> 4. All peremptory challenges are exhausted.
>
> 5. When all peremptory challenges have been exhausted, appellant makes a request for additional peremptory challenges.
>
> 6. Finally, the defendant must assert that an objectionable juror sat on the case. The appellant should point out to the trial court that he is being forced to try the case with a juror seated whom he would have exercised a peremptory challenge had he had one.
>
> Harris v. State, 790 S.W.2d 568 (Tex.Cr.App. 1989); see also Cumbo v. State, 760 S.W.2d 251, 254 (Tex.Cr.App. 1988); Bell, 724 S.W.2d at 796; East v. State, 702 S.W.2d 606, 612 (Tex.Cr.App. 1985), cert. denied, 474 U.S. 1000, 106 S.Ct. 418, 88 L. Ed. 2d 368; White v. State, 629 S.W.2d 701, 707 (Tex.Cr.App. 1981), cert. denied, 456 U.S. 938, 102 S. Ct. 1995, 72 L. Ed. 2d 457 (1982)." Cooks v. State, 844 S.W.2d 697, 721 (Tex. Crim. App. 1992)

The Defendant complied with this requirement.

Additionally, a Defendant must also show that there were other jurors with whom he had to use his peremptory strikes whom the trial court erroneously refused to excuse for cause. It is clearly within the discretion of the trial court to grant additional peremptory challenges upon exhaustion of the statutory number of strikes. No abuse of discretion will be found for overruling a defendant's request for additional strikes in the absence of "wrongdoing" on the part of the trial court. Thomas v. State, 701 S.W.2d 653, 658 (Tex.Cr.App. 1985) Such "wrongdoing" may exist if the trial court has improperly overruled a defendant's challenge for cause and the defendant has accordingly used a strike on a juror who is subject to a challenge for cause. Cooks v. State, 844 S.W.2d 697 (Tex. Crim. App. 1992)

The Appellant has assigned as error, the refusal of the trial court to grant a challenge for cause to several jurors on whom he had to use peremptory strikes to insure that they were not on the jury. In the event that any of the challenges for cause complained of in this appeal should have been granted, the trial court committed an error which deprived the Defendant of a lawfully constituted jury, because of the lack of the ability to have the use of the proper number of peremptory challenges to strike jurors.

CONCLUSION UNDER POINT OF ERROR NUMBER SEVEN:

The refusal of the trial court to grant additional peremptory challenges to the

-42-

Defendant has caused the Defendant substantial harm, and the Defendant is entitled to have the judgment reversed and a new trial ordered, or to have the judgment reformed to reflect a sentence of life without parole.

POINT OF ERROR NUMBER EIGHT RESTATED:

The trial court erred in preventing the defendant from acquiring from Donna Vanscoy information with which to intelligently exercise his peremptory challenges and challenges for cause during jury selection.

STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER EIGHT: [17]

During the questioning of the potential juror Donna Vanscoy, the following occurred:

Q.     Now when we talk about this mitigation, where would you -- as far as the way this goes, where would you -- I know it says taking into consideration all the evidence, including the circumstances of the offense, Defendant's character and background, personal moral culpability of the Defendant, where would you expect the mitigation to come from?

MS. ALDOUS: Your Honor, I'm going to object.  May we approach on this?

THE COURT: You may.

(The following discussion was held at the bench.)
THE COURT: We're at a bench conference. The venire person cannot hear.

MS. ALDOUS:     Judge, this question is misleading to the juror. It's a deliberate backdoor attempt to get her to say that she can't follow the law. She repeatedly said that she would not require the defense to produce any evidence at all, that they don't have a burden on Special Issue No. 2, and that neither party has a burden.

_____

[17] Appendix - Attachment 12 (Reporter's Record Vol. 32, Pg. 101 to 102 )

-44-

MR. WOOTEN:       Actually, Judge, the reason I'm asking this question is because what a juror said yesterday or the day before. Because they actually said that and it occurred to me that, I mean, that's what the juror said. It's not a backdoor attempt. I'm asking her if she assumes that we're going to bring it, then that would be putting the burden on us.

MS. ALDOUS:       Judge, he also just asked her would you require them to produce any mitigation evidence, and she said no. And now they are attempting to –

THE COURT:        So what's your legal objection?

MS. ALDOUS:       That the question is confusing to the juror and –

MS. YENNE:        Additionally, Your Honor –

THE COURT:        One lawyer.

MS. ALDOUS:       And there may or may not be mitigation in a case depending on the evidence.

MR. WOOTEN:       Judge, it's not a trial. There is no asked and answered in voir dire.

THE COURT:        Okay. I'm going -- I'm going to go ahead and sustain the objection.

MR. WOOTEN:       We pass the juror, Judge.

SUMMARY OF ARGUMENT UNDER POINT OF ERROR NUMBER EIGHT:

The trial court denied the defendant's attorney the right to ask and secure

information from a question asked of a juror during voir dire.  The question  asked

was a valid question and the court thereby denied the defendant's attorney the right

-45-

to discover the juror's views pertinent to the issues being tried. In such a case, harm is presumed and the abuse of the trial court's discretion requires a new trial. The recent decision in Easley v. State, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014) is distinguishable from the case on appeal, and in a death penalty case, the error should cause a reversal of the judgment and the granting of a new trial.

ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NUMBER EIGHT:

"Appellate courts apply unique standards with respect to preservation of error during voir dire. If a party asks a proper question of the venire, the other party objects, and the court sustains the objection, then error is preserved. Campbell, 685 S.W.2d at 25. "Appellant asked the question, and the State objected to the question. The trial court sustained the objection. Appellant was thus prevented, by a ruling of the court, from asking a proper voir dire question of the jury panel. The error was preserved for review." Id. Appellant was not required to further develop or exhaust the subject at issue by engaging in further questioning. Id. at 26. See also Nunfio v. State, 808 S.W.2d at 484, overruled on other grounds in Barajas, 93 S.W.3d at 40, and Gonzales v. State, 994 S.W.2d 170, 172 (Tex. Crim. App. 1999). The State mischaracterizes our holding in Campbell as determining that error is preserved in such circumstances only when the court has made a solitary ruling to disallow a proffered question. We stated in Campbell that further questioning or development of the subject at issue is not required to preserve error. 685 S.W.2d at 26. However, it does not follow that engaging in further questioning or development causes error to be forfeited" Samaripas v. State, 2014 Tex. Crim. App. LEXIS 1559, 11 (Tex. Crim. App. Oct. 15, 2014)

"In Smith, 703 S.W.2d at 643, we reiterated the proposition that HN18 the trial court must not restrict proper questions which seek to discover a juror's views on an issue applicable to the case. See Powell

v. State, 631 S.W.2d 169 (Tex.Cr.App. 1982) (punishment philosophy is a proper question); Clark v. State, 608 S.W.2d (Tex.Cr.App. 1980) (conclusion about guilt or innocence is a proper area); Smith v. State, 513 S.W.2d 823 (Tex.Cr.App. 1974) (bias against parts of the range of punishment is a proper matter); Mathis v. State, 167 Tex.Cr.R. 627, 322 S.W.2d 629 (1959) (juror's views relative to a defendant's defense is a proper question)." Boyd v. State, 811 S.W.2d 105, 118 (Tex. Crim. App. 1991)

The scope of permissible voir dire examination is necessarily broad to enable litigants to discover bias or prejudice so that they may make challenges for cause or peremptory challenges. Sanchez v. State, 165 S.W.3d 707, 711-12 (Tex. Crim. App. 2005). Zavala v. State, 401 S.W.3d 171, 175 (Tex. App. Houston 14th Dist. 2011) Villarreal v. State, 2014 Tex. App. LEXIS 8589 (Tex. App. Austin Aug. 7, 2014)

The question was not a commitment question and not a global fishing expedition. If it turned up a reason to strike the juror for cause, then it is most certainly a valid question. The question posed by the attorney for the Defendant was designed to probe the mind of the juror to assess her feelings. Additionally, it inquired in the ability of the juror to consider mitigation in arriving at a response to the mitigation special issue.

The objection of the state's attorney was: (1) that the question was confusing and (2) there may or may not be mitigation in the case. Neither objection was a valid reason that the defendant's attorney should not have been able to get an answer.

A trial court's decision to restrict voir dire may only be reviewed to determine

whether the restriction constituted an abuse of discretion.  The test for reviewing a

trial court's restriction of voir dire is:

> "If the question is proper, an answer denied prevents intelligent use of the peremptory challenge and harm is shown. Therefore, to show an abuse of discretion, a defendant must demonstrate that the question he sought to ask was proper. If the question was proper and the defendant was prevented from asking it, then harm is presumed because the defendant could not intelligently exercise his peremptory challenges without the information gained from an answer." Smith v. State, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985)

*Harm Analysis*

In  Easley v. State, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014) , the

court of criminal appeals held that while  there may be instances in which a judge's

limitation on voir dire is "so substantial" as to rise to the level of a constitutional

error, such instances are generally the exception rather than the rule.  The correct

inquiry to determine is whether the error was of a constitutional nature, and therefore,

was not whether defense counsel was prevented from exercising his "preferred

method" of questioning.  The actual language of the opinion was:

> "For these reasons, we overrule Plair to the extent it holds that erroneously limiting an accused's or counsel's voir dire presentation is constitutional error because the limitation is a per se violation of the right to counsel. This, of course, is different from holding that such an error may never rise to the level of constitutional magnitude. There may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error as constitutional error subject to a Rule 44.2(a) harm analysis. This case, however, does not present one." Easley v. State, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014)

In this case, the question was intended to gather information about the attitudes and bias of the potential trial juror concerning mitigation in deciding whether a sentence of life or a sentence of death would be an appropriate sentence for the defendant. The United States Supreme Court has held that a defendant is constitutionally entitled to a mitigation instruction in a death penalty case, and the evidence of mitigation can be any relevant factor. As stated in <u>Lockett v. Ohio</u>,

> "We are now faced with those questions and we conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. We recognize that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes. The considerations that account for the wide acceptance of individualization of sentences in noncapital cases surely cannot be thought less important in capital cases. Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases." Lockett v. Ohio, 438 U.S. 586, 604-605 (U.S. 1978)

Appellant believes that the court of appeals decision in distinguishing the Easley case in answers to voir dire questions is the correct application of Easley. And is the correct rule of law in the case now before this court and in all death penalty cases. In explaining the distinction, <u>Hill v. State</u> held:

> "We think this situation is distinguishable from Easley and the cases it overruled and is more like Martinez v. State, where the court held that

the trial court erred when it refused to permit defense counsel to question the venire panel about the full range of punishment. Martinez v. State, 588 S.W.2d 954, 956-57 (Tex. Crim. App. [Panel Op.] 1979). Although Martinez relied on Mathis v. State, 576 S.W.2d 835, 839 (Tex. Crim. App. 1979), overruled by Easley, 2014 Tex. Crim. App. LEXIS 272, 2014 WL 941451, at *5, and on Mathis v. State, 167 Tex. Crim. 627, 322 S.W.2d 629, 631-32 (Tex. Crim. App. 1959), which relied on Plair, and so also is overruled, both Mathis cases dealt with peremptory challenges, while Martinez did not. It is our view that HN9 the refusal to permit defense counsel to ask all venire members if they could consider the minimum punishment, as enhanced, is a constitutional violation." Hill v. State, 426 S.W.3d 868, 877 (Tex. App. Eastland 2014) Petition for discretionary review refused

Rule 44.2(a) applies to constitutional errors subject to harmless-error review and mandates that "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a) Prior to Easley v. State, supra, the refusal to allow an answer to a proper voir dire question was reversible error per se. Because in this instance, the error in not allowing the attorney to gain information about the jurors feelings concerning the issue of mitigation was a constitutional area of inquiry, the analysis under Rule 44.2(a) requires reversal.

CONCLUSION UNDER POINT OF ERROR NUMBER EIGHT:

Because of the error committed by the trial court, the judgment should be reversed and a new trial ordered. In the alternative, the sentence should be reformed to life without parole.

POINT OF ERROR NUMBER NINE RESTATED:

The trial court erred in preventing the defendant from acquiring from Stephanie Cooper information with which to intelligently exercise his peremptory challenges and challenges for cause during jury selection.

STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER NINE:

During the questioning of the potential juror Stephanie Cooper, the Defendant's attorney gave the juror a hypothetical occurrence where a defendant had been convicted in the guilt stage of a capital murder. In the hypothetical, the crime was intentional and there were no defenses to the commission of the crime. After being given the hypothetical, the juror was asked: "What are your feelings in that hypothetical about the death penalty being the only appropriate remedy for that guilty murderer?"

The State objected to the form of the question as an improper commitment to an improper hypothetical. After a discussion out of the hearing of the juror, the trial court sustained the objection. [18]

At the end of questioning and before she had made any response to acceptance

---

[18] Appendix - Attachment 13 (Reporter's Record Vol. 27, Pg. 190 to 195 )

or rejection of the juror, the defendant's attorney revised the question to take out any part that was objectionable to the state's attorney and requested the trial court to allow her to re-ask the question. The trial court refused to do so saying that he had already ruled. [19]

SUMMARY OF ARGUMENT UNDER POINT OF ERROR NUMBER NINE:

The trial court denied the defendant's attorney the right to ask and secure information from a question asked of a juror during voir dire. The question asked was a valid question and the court thereby denied the defendant's attorney the right to discover the juror's views pertinent to the issues being tried. In such a case, harm is presumed and the abuse of the trial court's discretion requires a new trial. The recent decision in Easley v. State, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014) is distinguishable from the case on appeal, and in a death penalty case, the error should cause a reversal of the judgment and the granting of a new trial. ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NUMBER NINE:

> "In Smith, 703 S.W.2d at 643, we reiterated the proposition that the trial court must not restrict proper questions which seek to discover a juror's views on an issue applicable to the case. See Powell v. State, 631 S.W.2d 169 (Tex.Cr.App. 1982) (punishment philosophy is a proper question); Clark v. State, 608 S.W.2d (Tex.Cr.App. 1980) (conclusion about guilt or innocence is a proper area); Smith v. State, 513 S.W.2d 823 (Tex.Cr.App. 1974) (bias against parts of the range of punishment

---

[19] Appendix - Attachment 14 (Reporter's Record Vol. 27, Pg. 204 to 207 )

is a proper matter); Mathis v. State, 167 Tex.Cr.R. 627, 322 S.W.2d 629 (1959) (juror's views relative to a defendant's defense is a proper question)." Boyd v. State, 811 S.W.2d 105, 118 (Tex. Crim. App. 1991)

"Appellate courts apply unique standards with respect to preservation of error during voir dire. If a party asks a proper question of the venire, the other party objects, and the court sustains the objection, then error is preserved. Campbell, 685 S.W.2d at 25. "Appellant asked the question, and the State objected to the question. The trial court sustained the objection. Appellant was thus prevented, by a ruling of the court, from asking a proper voir dire question of the jury panel. The error was preserved for review." Id. Appellant was not required to further develop or exhaust the subject at issue by engaging in further questioning. Id. at 26. See also Nunfio v. State, 808 S.W.2d at 484, overruled on other grounds in Barajas, 93 S.W.3d at 40, and Gonzales v. State, 994 S.W.2d 170, 172 (Tex. Crim. App. 1999). The State mischaracterizes our holding in Campbell as determining that error is preserved in such circumstances only when the court has made a solitary ruling to disallow a proffered question. We stated in Campbell that further questioning or development of the subject at issue is not required to preserve error. 685 S.W.2d at 26. However, it does not follow that engaging in further questioning or development causes error to be forfeited" Samaripas v. State, 2014 Tex. Crim. App. LEXIS 1559, 11 (Tex. Crim. App. Oct. 15, 2014)

The question was not a commitment question. It was designed to probe the mind of the juror to assess her feelings. Additionally, if it turned up a reason to strike the juror for cause, then it is most certainly a valid question.

"A trial court's decision to restrict voir dire may only be reviewed to determine whether the restriction constituted an abuse of discretion. Smith, supra. The test for reviewing a trial court's restriction of voir dire was recently reaffirmed: "If the question is proper, an answer denied prevents intelligent use of the peremptory challenge and harm is shown." Powell, supra at 170, quoting Mathis, 576 S.W.2d at 837. See also

Smith, supra. Therefore, to show an abuse of discretion, a defendant must demonstrate that the question he sought to ask was proper. If the question was proper and the defendant was prevented from asking it, then harm is presumed because the defendant could not intelligently exercise his peremptory challenges without the information gained from an answer." Smith v. State, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985)

*Harm Analysis*

The next question is whether the denial of the question is sufficient to require reversal pursuant to Tex. R. App. P. Rule 44.2.

In Easley v. State, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014) , the court of criminal appeals held that while there may be instances in which a judge's limitation on voir dire is "so substantial" as to rise to the level of a constitutional error, such instances are generally the exception rather than the rule. The correct inquiry to determine is whether the error was of a constitutional nature, and therefore, was not whether defense counsel was prevented from exercising his "preferred method" of questioning. The actual language of the opinion was:

> "For these reasons, we overrule Plair to the extent it holds that erroneously limiting an accused's or counsel's voir dire presentation is constitutional error because the limitation is a per se violation of the right to counsel. This, of course, is different from holding that such an error may never rise to the level of constitutional magnitude. There may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error as constitutional error subject to a Rule 44.2(a) harm analysis. This case, however, does not present one." Easley v. State, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014)

The Easley Court went on to say that unless there was constitutional error, the harm analysis should be under 44.1(b), "that the complained of error affects the substantial rights of the Defendant". Since there is no mechanism for the Appellant to show what the answer would be, it is almost impossible for him to show that he was substantially harmed by the failure to allow an answer to the question which would have been given by the juror. A trial where the death penalty is sought is a special case because a sentence of death has an irreversible finality. It is a type of case where many potential jurors have strong emotions and opinions. It is only in this kind of case that individual voir dire is required. This Court's prior opinion that harm must be assessed under Rule 44.2(b) should be visited again when the question was asked on individual voir dire in a death penalty case.

In the Easley case, the purpose was to explain the various presumptions of proof. In the Appellant's case, the purpose of the question was intended to gather information about the attitudes and bias of the potential fact finder concerning the decision of whether a sentence of life or a sentence of death would be an appropriate sentence for the defendant.

Appellant agrees with the distinction which was drawn in Hill v. State when the court of appeals stated:

> "We think this situation is distinguishable from Easley and the
> cases it overruled and is more like Martinez v. State, where the court

held that the trial court erred when it refused to permit defense counsel to question the venire panel about the full range of punishment. Martinez v. State, 588 S.W.2d 954, 956-57 (Tex. Crim. App. [Panel Op.] 1979). Although Martinez relied on Mathis v. State, 576 S.W.2d 835, 839 (Tex. Crim. App. 1979), overruled by Easley, 2014 Tex. Crim. App. LEXIS 272, 2014 WL 941451, at *5, and on Mathis v. State, 167 Tex. Crim. 627, 322 S.W.2d 629, 631-32 (Tex. Crim. App. 1959), which relied on Plair, and so also is overruled, both Mathis cases dealt with peremptory challenges, while Martinez did not. It is our view that HN9 the refusal to permit defense counsel to ask all venire members if they could consider the minimum punishment, as enhanced, is a constitutional violation." Hill v. State, 426 S.W.3d 868, 877 (Tex. App. Eastland 2014) Petition for discretionary review refused

As applied to the instant appeal, the trial court's action in refusing to allow the answer to the question of the defendant's attorney is subject to a Rule 44.2(a) analysis. Under a Rule 44.2(a) analysis, the abuse of discretion by the trial court would be reversible error.

CONCLUSION UNDER POINT OF ERROR NUMBER NINE:

Because of the error committed by the trial court, the judgment should be reversed and a new trial ordered. In the alternative, the sentence should be reformed to life without parole.

<u>POINT OF ERROR NUMBER TEN RESTATED:</u>

The trial court erred in preventing the defendant from acquiring from Audrey Holt information with which to intelligently exercise his peremptory challenges and challenges for cause during jury selection.

<u>STATEMENT OF FACTS UNDER POINT OF ERROR NUMBER TEN:</u> [20]

During the questioning of the potential juror Audrey Holt, the following occurred:

Q.     Okay. You said you live here in Angleton. Is that right?

A.     Yes.

Q.     Okay. Do you have a feel for what the community thinks about the death penalty? Do you think most of the community is in favor of it?

MS. YENNE:     Your Honor, I'm going to object to relevancy and improper form of the question by venire about the Angleton community.

THE COURT:     Sustained.

MS. MALLON:     Can we approach, please?

THE COURT:     You may.

(The following discussion was held at the bench.)

THE COURT:     Your response? We're at a bench conference. The venire person cannot hear.

MS. MALLON:     Your Honor, this is not a witness in a case. It's a juror in a

---

[20]     Appendix - Attachment 15 (Reporter's Record Vol. 23, Pg. 99 to 100 )

Capital Murder case. There is no relevancy objection to determining a juror's feelings on all the issues at stake in this case. Voir dire is intended to be very broad.

THE COURT: I agree. But to elicit facts.

MS. YENNE: It's her feelings, not a community's feelings, on their perspective in an effort to put pressure on the venireman.

THE COURT: I'm going to sustain the objection as to the community's feelings.

(Bench discussion concluded

## SUMMARY OF ARGUMENT UNDER POINT OF ERROR NUMBER TEN:

The trial court denied the defendant's attorney the right to ask and secure information from a question asked of a juror during voir dire. The question asked was a valid question and the court thereby denied the defendant's attorney the right to discover the juror's views pertinent to the issues being tried. In such a case, harm is presumed and the abuse of the trial court's discretion requires a new trial. The recent decision in Easley v. State, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014) is distinguishable from the case on appeal, and in a death penalty case, the error should cause a reversal of the judgment and the granting of a new trial.

## ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NUMBER TEN:

"Appellate courts apply unique standards with respect to preservation of error during voir dire. If a party asks a proper question of the venire, the other party objects, and the court sustains the objection, then error is preserved. Campbell, 685 S.W.2d at 25.

-59-

"Appellant asked the question, and the State objected to the question. The trial court sustained the objection. Appellant was thus prevented, by a ruling of the court, from asking a proper voir dire question of the jury panel. The error was preserved for review." Id. Appellant was not required to further develop or exhaust the subject at issue by engaging in further questioning. Id. at 26. See also Nunfio v. State, 808 S.W.2d at 484, overruled on other grounds in Barajas, 93 S.W.3d at 40, and Gonzales v. State, 994 S.W.2d 170, 172 (Tex. Crim. App. 1999). The State mischaracterizes our holding in Campbell as determining that error is preserved in such circumstances only when the court has made a solitary ruling to disallow a proffered question. We stated in Campbell that further questioning or development of the subject at issue is not required to preserve error. 685 S.W.2d at 26. However, it does not follow that engaging in further questioning or development causes error to be forfeited" Samaripas v. State, 2014 Tex. Crim. App. LEXIS 1559, 11 (Tex. Crim. App. Oct. 15, 2014)

The inquiry had relevance in that if the juror had a feel for what the attitudes of the community was, it might lead to more questions as what effect that knowledge would have on her fitness to serve as a juror in the trial in a death penalty case. The question was not a global fishing expedition but was limited in scope and related to the area where the juror resided. It was intended to find out what her perception of the community attitudes was and what influence that knowledge would have on her decisions as a juror. The future questions were intended to flush out what, if any, her bias might have been as a result of the influences of the community where she resided and worked.

"A trial court's decision to restrict voir dire may only be reviewed to determine whether the restriction constituted an abuse of discretion. Smith, supra. The test for reviewing a trial court's restriction

-60-

of voir dire was recently reaffirmed: "If the question is proper, an answer denied prevents intelligent use of the peremptory challenge and harm is shown." Powell, supra at 170, quoting Mathis, 576 S.W.2d at 837. See also Smith, supra. Therefore, to show an abuse of discretion, a defendant must demonstrate that the question he sought to ask was proper. If the question was proper and the defendant was prevented from asking it, then harm is presumed because the defendant could not intelligently exercise his peremptory challenges without the information gained from an answer." Smith v. State, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985)

*Harm Analysis*

The next question is whether the denial of the question is sufficient to require reversal pursuant to Tex. R. App. P. Rule 44.2. Recently, the Court of Criminal Appeals determined that the harm as a result of the error should be analyzed pursuant to a non-constitutional harm analysis under Rule 44.2(b). In that case, the Appellant was trying to explain a concept when the trial court refused to allow him to do so. In this case, the Appellant was trying to determine the feelings of the juror through the use of questioning. Since there is no mechanism for the Appellant to show what the answer would be, it is almost impossible for him to show that he was substantially harmed by the failure to allow an answer to the question to be given by the juror. This Court's prior opinion that harm must be assessed under Rule 44.2(b) should be visited again at least in death penalty cases. Appellant agrees with the distinction which was drawn in Hill v. State when the court of appeals stated:

"We think this situation is distinguishable from Easley and the

cases it overruled and is more like Martinez v. State, where the court held that the trial court erred when it refused to permit defense counsel to question the venire panel about the full range of punishment. Martinez v. State, 588 S.W.2d 954, 956-57 (Tex. Crim. App. [Panel Op.] 1979). Although Martinez relied on Mathis v. State, 576 S.W.2d 835, 839 (Tex. Crim. App. 1979), overruled by Easley, 2014 Tex. Crim. App. LEXIS 272, 2014 WL 941451, at *5, and on Mathis v. State, 167 Tex. Crim. 627, 322 S.W.2d 629, 631-32 (Tex. Crim. App. 1959), which relied on Plair, and so also is overruled, both Mathis cases dealt with peremptory challenges, while Martinez did not. It is our view that HN9 the refusal to permit defense counsel to ask all veniremembers if they could consider the minimum punishment, as enhanced, is a constitutional violation." Hill v. State, 426 S.W.3d 868, 877 (Tex. App. Eastland 2014) Petition for discretionary review refused

As applied to the instant appeal, the trial court's action in refusing to allow the answer to the question of the defendant's attorney is subject to a Rule 44.2(a) analysis.

Under a Rule 44.2(a) analysis, the abuse of discretion by the trial court would be reversible error.

CONCLUSION UNDER POINT OF ERROR NUMBER TEN::

Because of the error committed by the trial court, the judgment should be reversed and a new trial ordered. In the alternative, the sentence should be reformed to life without parole.

## PRAYER

WHEREFORE, Premises Considered, the Appellant requests and prays that the judgment of the trial court be reversed and that a new trial should be granted.

Respectfully submitted,

/s/ Jimmy Phillips Jr.

Jimmy Phillips, Jr.
P. O. Drawer 29
Angleton, Texas  77516-0029
979 849-8511
Fax 979 849-1409
Bar Card #15953000

ATTORNEY FOR APPELLANT
JAMES HARRIS JR.

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of Appellant's Brief was personally served on the Brazoria County District Attorney, 111 E. Locust, Suite 408A, Angleton, TX 77515 on February 3rd, 2015.

/s/ Jimmy Phillips Jr.

Jimmy Phillips, Jr.
Attorney for Appellant

## CERTIFICATE OF DOCUMENT WORD COUNT

I do hereby certify that the word count of the Appellant's Brief is 16,098 words pursuant to the word count by Word Perfect 7.

/s/ Jimmy Phillips Jr.

Jimmy Phillips, Jr.
Attorney for Appellant